WASHINGTON,
*March*,
1841.

### HIRAM POTTER *v.* GAMALIEL WASHBURN.

Where *personal property*, at the time of a sale, is in the actual custody of a third person, who consents to keep it for the vendee, this is a sufficient change of possession to perfect the sale, as against the creditors of the vendor.

The fact that one has a deed of land on record, is not, of itself, sufficient to show that his grantor had any interest in the land.

Where one attempts to derive title to land through the heirs of a former proprietor, the fact of heirship cannot be shown by a recital in the deed, if of recent date.

Possession of personal property is sufficient title to enable the plaintiff to maintain trespass against a mere stranger.

If a witness is offered by the defendant to defeat a certain claim and is rejected by the court, and the claim is subsequently abandoned, the decision of the court is *no ground* of *new* trial, nor is there any necessity of determining its correctness.

TRESPASS, for taking and carrying away five hundred cedar posts.

Plea, not guilty, with notice of special matter, and further notice that the posts were taken and sold as the property of Amasa Huntington on an execution in favor of Joseph A. Wing, and also as the property of James Pittsley on an execution in favor of Lawrence & Lamb.

Issue to the country.

Verdict and judgment in the county court for the plaintiff.

On the trial in the county court, the plaintiff introduced testimony, tending to prove that said Huntington cut the posts in question in Harris' Gore and carried them to the town of Marshfield, and put them in a pile on a piece of common and uninclosed land, owned by one Davis, near the house of said Pittsley, where the said Huntington then resided; that Pittsley had a parol lease of said land from the owner, and had the care of it, as much as a man could be said to have the care of uninclosed land of which he had no title; that after the posts were put upon said land, and before the attachments were made, Huntington sold them to the plaintiff; that after the sale and before the attachments, the plaintiff notified Pittsley of the sale, and, at the plaintiff's request, Pittsley consented that they might remain where they were, which was all the care or possession that the plaintiff took of said posts; that when the defendant

came to attach them, he was notified by Pittsley of the sale to the plaintiff.

The defendant offered Judson White as a witness to prove that White and Huntington were joint owners of the posts, and that White had never sold his interest in them to the plaintiff, but was still a joint owner and had never authorized the plaintiff to sue for them, or any part of them. The plaintiff objected to his testifying on the ground that the witness was interested in that question and could not testify for the defendant, and the county court excluded the testimony so offered.

The defendant gave in evidence the charter of Harris' Gore, in which it appeared that Elijah Gore was one of the original proprietors; also the proprietors' records, from which it appeared that lot No. 13 was drawn to the right of said Elijah Gore; also a deed from Elijah Gore, (not the original grantee,) and others, to Zenas Barney and wife, in which deed the grantors described themselves as heirs at law of Elijah Gore, the original proprietor, conveying, among other lands, said lot No. 13, which deed was dated February 17, 1821, and recorded September 5, 1822; also, a deed from said Barney and wife to John Holbrook, conveying the same land, dated February 20,1822,and recorded September 5,1822. The defendant also introduced testimony tending to prove that said Holbrook was dead and that Sarah Holbrook was executrix of his last will and testament; that said posts were cut by said Huntington on said lot No. 13, without any leave or license from the heirs, devisees or executrix of Holbrook, and that the defendant has since settled with said executrix therefor. The plaintiff objected to said deeds as not showing any title in said Holbrook from the original proprietor of said lot.

There was no testimony in the case tending to show that the persons who executed the deed to Barney and wife were in fact the heirs of Gore, the original proprietor.

The deed from Barney and wife to Holbrook was executed by virtue of a power of attorney. There was no testimony in the case, other than what is above stated, tending to show that the posts were not cut by the permission of the owner of the land, nor that they were not justly the property of Huntington.

At the time when Judson White was offered as a witness to show that he was a joint owner of the property sued for, it was admitted that the defendant had not taken the property by reason of any permission, or under any process, which could justify taking it as the property of White. White was permitted to testify and did testify in relation to every part of the case, except the question of his being a joint owner ; and after the verdict was rendered, and before judgment, the plaintiff entered a *remittitur* as to one half the damages recovered.

The defendant requested the court to charge the jury that if they believed the whole testimony, introduced by the plaintiff, still they must find for the defendant, as there had been no sufficient change of possession as against creditors ; that the deed from Barney and wife to Holbrook, conveyed to the latter a good title as against a mere trespasser, and, if they should find that Huntington cut the posts on said lot No. 13, without law or right, and that the defendant had paid the executrix of Holbrook therefor, the defendant would be entitled to a verdict ; that if the posts were cut upon said lot by Huntington, and that the heirs or devisees of Holbrook had no title, still, if Huntington cut them without license, he acquired no title and could convey none to the plaintiff, and that the title to the posts remained in the owners of the land ; and, as the plaintiff had not actual possession of the posts, he could not recover in this action. The court declined so to charge the jury, but instructed them, ' that, if they believed all the facts detailed in the case, there ' was a sufficient change of possession from Huntington to the ' plaintiff to perfect the sale, as against the creditors of Hun- ' tington, and that the testimony put into the case did not ' show any title in the estate of Holbrook to the lands de- ' scribed in the deed from Barney and wife to Holbrook, ' and that it was not incumbent upon the plaintiff to show ' that his title was indefeasible ;—that possession, of the ' character stated in the case, and a purchase *bona fide*, and ' for adequate consideration, of Huntington, who had the pos- ' session and ostensible property, was sufficient.'

The defendant excepted to the decisions, charge, and refusal to charge, of the county court.

WASHINGTON,
*March,*
1841.

Potter
*v.*
Washburn.

*J. A. Wing* and *W. Upham,* for defendant.

The court erred in charging the jury that there was a sufficient change of possession.

The case shows that the property remained in the same position after the sale as before, and that after the sale there had been no visible, substantial change of possession which would perfect the sale as to creditors of Huntington or put them on inquiry. Therefore, the sale was fraudulent and void as to the creditors. *Durkey* v. *Mahoney,* 1 Aik. R. 116. *Boardman* v. *Keeler,* id. 158. *Mott* v. *M'Neil,* id. 162. *Weeks* v. *Weed,* 2 Aik. 64, and cases cited. *Batchelder* v. *Carter,* 2 Vt. R. 168. *Beattie* v. *Robin,* id. 181. *Moore* v. *Kelley,* 5 id. 34. *Judd & Harris* v. *Langdon,* id. 231. *Farnsmorth* v. *Shepherd,* 6 id. 521. *Emerson et al.* v. *Hyde,* 8 id. 353.

It is true that where property is in the possession of a third person, who has the control of it, as cattle in the keeping of the bailee, or a chaise in the bailee's barn, then notice by both the vendor and vendee, and an agreement to keep the property for the vendee, is sufficient. Such are the cases of *Pierce* v. *Chipman,* 8 Vt. R. 334. *Barney* v. *Brown,* 2 Vt. R. 374. *Spalding* v. *Austin,* 2 Vt. R. 555. In those cases the vendor had not the possession of the property at the time of the sale, and no person would trust him on the credit of the property. It is the possession which gives the credit, and the retaining the property which is the evidence of fraud.

Judson White was improperly excluded from testifying. He had no interest in the event of the suit, and the verdict would not be evidence for or against him, and the plaintiff has not cured the error by entering a *remittitur* of half the damages. The defendant claims that he had a right to have his evidence heard and weighed by the jury. If the plaintiff had not supposed that it would be for his interest to keep out the witness, and enter a *remittitur* for one half of the damages in case of a recovery, he would have permitted the witness to testify. No jury would have given as much in proportion for one undivided half of property as he would if the property was free from a joint tenancy, and the defendant insists he has a right to have the question tried by a jury.

WASHINGTON,    The court erred in charging the jury that the deeds, offer-
*March*,      ed by the defendant, showed no title in the estate of John
1841.
—————      Holbrook.    The grantors describe themselves in the deed as
Potter      the heirs at law of the original proprietor of the land.    This
*v.*        we contend was *prima facie* evidence that they were so, or
Washburn.
at least it was evidence for the jury to weigh.

The estate of Holbrook had a deed of the land, duly execut-
ed and recorded, and had been recorded for many years.  He
therefore had a good title, as against a mere trespasser, and
the court should have so charged, and should have charged,
upon the other points, as requested by the defendant.

If A. deeds to B., and B. to C. in an action in relation to
the land, C. is not bound to prove, by parol, that it was the
same B. that deeded to him that received the deed from A.
The production of the deeds is *prima facie* evidence of the
fact.

If Huntington stole the timber, he acquired no title to it,
and could convey none to the plaintiff.    The plaintiff, not
having actual possession, and the title remaining in the owner
of the land, was not entitled to recover, and the court should
so have instructed the jury.    The only cases where the thief,
or the persons claiming under him, have been allowed to re-
cover, are where the plaintiff has had the actual visible posses-
sion of the property, and the recovery has been had on the
ground of possession, and a person ought not, in any case,
to recover when the verdict would not be a protection to the
defendant.    *Knapp & Worden* v. *Winchester*, 11 Vt. R.
351.

The charge of the court left nothing for the jury to do.
The court told the jury if they believed all the *facts* detail-
ed in the case, there was a sufficient change of possession.
The court should have instructed the jury what would have
been a sufficient change of possession, and left the evi-
dence to the jury that they might have found the facts.    The
court also told the jury there was nothing for them to do on
the other parts of the case.

The court erred in not informing the jury what would
have been a sufficient change of possession, and also in
charging them that a purchase from Huntington, *bona fide*,
and for adequate consideration, was sufficient, when no evi-
dence of consideration had been given, and there was nothing

in the case which required it, as no consideration had been paid for the posts. The court should have charged that there was *fraud in fact* as well as *fraud in law*, and that the sale was therefore void.

*Curtiss* and *L. B. Peck*, for plaintiff.

1. The evidence shows a sufficient change of possession, according to the repeated adjudications of this court. *Barney* v. *Brown*, 2 Vt. R. 374. *Spaulding* v. *Austin*, id. 555. *Pierce* v. *Chipman*, 8 id. 334.

2. White was offered to show himself a joint owner with the plaintiff of the property sued for, and to testify generally in the case. He was permitted to testify to all facts for which he was offered, except as to his owning an undivided half of the property claimed. If he was an admissible witness to this point, the rejection of his testimony is cured by the *remittitur*, as his evidence, if admitted, would only have affected the question of damages.

3. The defendant entirely failed in showing the title of the lot, on which the timber was cut, in Holbrook. No evidence was given tending to prove that the grantors of the deed to Barney and wife were in fact the heirs of *Gore*. The fact that they described themselves as such in the conveyance, had no tendency to prove that fact. The deed from Barney and wife to Holbrook was executed by virtue of a power of attorney, which the wife had no authority to execute. *Sumner* v. *Conant*, 10 Vt. R. 9.

4. Both Huntington and the plaintiff claimed the timber, under an assertion of title, and, for aught that appears in the case, they were the legal owners. It does not appear but the timber was taken from the lot by the permission of the owner. Under these circumstances the plaintiff was entitled to recover against the defendant, who was a mere stranger. *Fisher* v. *Cobb*, 6 Vt. R. 622. *Knapp et al.* v. *Winchester*, 11 id. 351. *Oughton* v. *Sippings*, 20 Com. L. R. 380.

The opinion of the court was delivered by

Redfield, J.—The apparent importance of this cause to the parties, and the extent of erudition, as well as of minute criticism, which the discussion at the bar has put in requisi-

WASHINGTON,
March,
1841.

Potter
. v.
Washburn.

tion, might, perhaps, have justified a more extended opinion. But the very great number of cases which it becomes necessary, under the present law, to report, makes it indispensable to study brevity.

We think the change of possession was sufficient. Where property, at the time of the sale, is in the actual custody of some bailee or depositary for the vendor, all that is ever required, in order to perfect the sale, as against creditors, is that the depositary shall be . notified of the transfer, and consent to keep the property for the vendee. Cases might, perhaps, occur where less would suffice.

In regard to the evidence offered to show that the defendant, since the trespass committed, had obtained a release from the real owner of the property, it is not necessary to decide. The evidence falls short of showing that fact. There is no evidence that the estate of John Holbrook possessed any interest in the land, on which the posts were cut, except what results from a deed recorded, without possession, and no evidence of the title of the grantor. This has never been recognized, in this state, as giving to the grantee any interest in the land.

It is very certain when one attempts to derive title to land through the heirs of a former proprietor, the fact of heirship must be proved. This cannot be done. by a recital, merely, in the deed, especially where the deed is of recent date, which, at most, amounts to a mere *claim* of heirship.

It is always true, that the possessor of personal property may maintain trespass against a mere wrongdoer, without showing the extent of his right. Possession is, of itself, sufficient title against all the world, except the true owner.

In regard to the interest of the witness, White, it is not necessary to decide. Had his testimony been received, it could at most have only reduced the damages to the extent of his own interest, and, by releasing those damages, the plaintiff has wholly obviated the exception.

The exception to the form in which the case is drawn up is too refined for practical application. It seems to have resulted from the fact that the counsel drew up the case, by detailing all the testimony ; that in the charge to the jury the word " facts " is used instead of " testimony ; " but not

in such a manner as, by any possibility, to mislead the jury. The jury should have been told *if they believed all the testimony detailed ;* but where there is no conflict in the testimony, the expression, " the facts detailed " seems to be of much the same import. If the jury believed all the " facts detailed," it must be all " facts detailed " in the testimony. And how could they do this, and not believe the testimony, is past our comprehension. It is no doubt true, that critical accuracy would give a preference to the use of the term " testimony " instead of " facts," but so correct a writer as Mr. Starkie, in numerous instances, uses the terms as synonymous and convertible. We should not have deemed this exception deserving so much as a remark, *en passant,* had it not been for the apparent self-delusion which the counsel seem to have brought upon themselves in regard to the matter. For if the " facts detailed " constituted a sufficient change of possession, as the jury were instructed, and as we now decide, it could not surely be necessary to inform the jury, in any other manner, what constituted a sufficient change of possession. We are glad that the counsel have brought this matter to the notice of the court, because it is important that cases should be stated with precision, and with some degree of critical accuracy ; and we like that the bar should feel perfect freedom in their remarks and strictures, upon cases, drawn up even in the haste of a *nisi prius* term. In the language of one of the most refined and elegant of the historians of the Roman Empire, *rara temporum felicitate, ubi sentire, quæ velis, et, quæ sentias, dicere licet.*

Judgment affirmed.