THE TOWN OF RANDOLPH *v.* THE TOWN OF WOODSTOCK.

*Deposition.    Evidence.*

By allowing a deposition to be read once without objection, a party waives all objections to any informality or irregularity in the taking of which he has knowledge, and thereafter he can only raise objections to the competency of the witness, or the subject matter of the deposition.

When a legal cause exists for taking a deposition when taken, the cause is presumed to exist, and the deposition continues to be admissible at any subsequent time, unless the cause be shown to have ceased by the party objecting.

A witness who was testifying in regard to a certain date, stated that he wrote a letter to one R. relative to that subject; whereupon, he was asked on cross-examination whether he did not in that letter state such date as different from what he had testified it to be. *Held*, that the inquiry was proper, and that the cross-examining party was not bound to produce the letter.

The mere fact that an improper inquiry is made of a witness while testifying, is not sufficient for granting a new trial, if no improper evidence be elicited by such inquiry.

If a witness, before there is time to check him or interpose an objection, gives incompetent or improper testimony, and the court instruct the jury that the testimony so given is not to be considered by them, there is no ground of error which can be revised by the supreme court.

APPEAL from an order of removal of one Lydia Billings, a pauper, from the town of Randolph to the town of Woodstock. Plea, that the pauper was unduly removed, and trial by jury at the January Term, 1861, PECK, J., presiding.

The controversy in the suit was as to the *time* of the removal of Joel Billings, the father of the husband of the pauper, with his family, from Woodstock to Hartland. On the part of Woodstock the evidence tended to show that said Joel Billings thus removed to Hartland in the spring of 1816, and on the part of Randolph that he removed in the fall of the same year. It was conceded that Joel Billings removed with his family from Hartland to Randolph August 16th, 1817, and that the present settlement of the pauper was in Woodstock, unless Joel Billings gained a settlement in Hartland, by one year's residence in that town, in 1816 and 1817.

Randolph *v.* Woodstock.

On· trial the plaintiffs offered the deposition of Eliza Billings, taken for the alleged cause that she was unable to attend court, by reason of sickness and bodily infirmity, to which the counsel for the defendants objected, for two reasons ; *first*, because the deposition was taken before J. K. Parish, Esq., a justice of the peace, who at the time of taking the same was an inhabitant of, and tax-payer in, Randolph. These facts the defendants proved to the court. *Secondly*, because there was no evidence that the deponent was, at the time of trial, unable to attend court and testify in the cause. And the defendants proved that this cause was partly tried at the June Term, 1859, and that at that time the deponent, who resided in Randolph, was in Chelsea at the time of the trial of this cause, but that she did not testify, as the witness said, because she was too feeble to be brought into court.

It was conceded that at the trial at the June Term, 1859, this same deposition, which had been taken in January previous, on due notice, to be used at that trial, was read without objection.

The court overruled the objections and admitted the deposition, to which the defendants excepted.

The defendants produced as a witness one Harley Burr, who testified in substance that he resided in Hartland in the spring of 1816, and was acquainted with Josh Billings, and that said Josh Billings was residing in Hartland in the spring of 1816, while the witness was residing there, and before July of that year, and that the witness left Hartland in August, 1816, and went to Rockingham, and never afterwards resided in Hartland. On cross-examination he stated that one William Rounds, of Chester, an attorney, called upon him in June, 1860, on behalf of the town of Woodstock, to ascertain what he remembered about the residence of Joel Billings in Hartland, and that he then told William Rounds that he would think it over and write him upon the subject; that he did afterwards write him accordingly, but that since writing he had remembered more. The plaintiffs'· counsel then proposed to ask Burr whether he did not write in that letter that it was in 1817 that he saw Joel Billings in Hartland and moved to Rockingham, to which the counsel for the defendants objected, but the court overruled the

Randolph *v.* Woodstock.

objection, and permitted the enquiry, to which the defendants excepted. There was no evidence that William Rounds, or the town of Woodstock, or their counsel, had had any notice to produce this letter upon trial, and no reason was shown why William Rounds could not have been summoned as a witness. The witness replied to this question as follows: "I did not write him that I left Hartland in 1817. Think I did not write the year—he did not want to know that."

The defendants introduced one Cynthia Bigelow as a witness, who testified in substance that in the spring of 1816, she worked at her trade as a tailoress for about two weeks, several miles from where she resided, at a Mr. Watkins, in Hartland, a near neighbor to said Joel Billings, and that during the time that she was thus working at said Watkins' she went with her cousin, a Miss Ashley, who lived in the same neighborhood, to the house of Joel Billings, and that Joel Billings, with his family, was then living in Hartland; that she was never at Joel Billings' but once, and saw them there at no other time. On cross-examination, the counsel for the plaintiffs proposed to ask this witness what conversation she and Miss Ashley had, at the time they were at Joel Billings', about the Billings family. The counsel for Woodstock objected. The counsel for Randolph then stated that he expected to show a conversation between her, (the witness,) and Miss Ashley, which would show that it was in 1817, instead of 1816, that the witness was there. The court told the counsel that if he expected to show that the witness on the stand on that occasion said any thing which would show that it was in 1817, instead of 1816, that she was there, thus tending to contradict her testimony, he might inquire as to what the witness stated, but not as to what Miss Ashley said. To this decision the defendants excepted. The inquiry was then made, limited to what the witness on the stand stated on that occasion at Joel Billings'. The witness answered as follows: "When we left the house, after we got out, I remarked, 'the children are all bare-foot.' She said, 'yes, they have been bare-foot all winter,' but I (the witness) knew nothing about their being there the winter before." What the witness stated as to what Miss Ashley said, was said by the witness before there was time to

Randolph *v.* Woodstock.

check her, or to interpose any objection. The court thereupon remarked that what Miss Ashley said was no evidence for any purpose. The counsel for the defendants then said that they excepted to the admission of what the witness said Miss Ashley said.

No exception was taken to the charge.

The jury returned a verdict in favor of the plaintiffs, that the pauper and her children were duly removed.

*Converse & French* and *A. Tracy,* for the defendants.

*E. Weston, L. B. Peck* and *P. Dillingham,* for the plaintiffs.

POLAND, CH. J. The deposition of Eliza Billings was properly admitted to be read in evidence.

By allowing the deposition to be read in evidence on the former trial without objection, the defendants waived their right to object to it, on the ground that the magistrate taking it was an inhabitant and tax payer in Randolph, and therefore disqualified to take the deposition.

It must be assumed that this fact was known to the agent of Woodstock, who attended the taking, and we think that by allowing a deposition to be read once without objection, the party waives all objections to any informality or irregularity in the taking, of which he has knowledge, and that thereafter he can only raise objections to the competency of the witness, or the subject matter of the deposition. When a deposition has thus been allowed to be once used without objection, the party taking it has the right to consider all objections relative to the taking waived, and may allow his witness to go out of the country, or not produce him on another trial, or take the risk of his decease, relying upon having secured his testimony, and to allow the opposite party afterwards to insist upon some informality or irregularity in the taking, would operate as a direct fraud.

The defendants insist that such waiver only applies to defects in the caption and certificate, and not to any informality in the taking not thus apparent. But in the case of *Walsh et al.* v. *Pierce* 12 Vt. 130, and *Perry* v. *Whitney,* 30 Vt. 390, irregulari-

ties in the taking, not apparent on the face of the caption and certificate, were held to be waived by once allowing the deposition to be read without objection. When a legal cause exists for taking a deposition when taken, the cause is presumed to exist, and the deposition continues to be admissible, at any subsequent time, unless the cause be shown to have ceased, by the party objecting. Whether the evidence offered by the defendant in this case, to show a removal of the cause, was sufficient for that purpose or not, presented a question of fact for the determination of the county court, and their decision of such question is conclusive, unless it appear that they in some way misapplied the law to the facts proved.

In this case we can not say there was any error in judging upon the evidence, or in the application of the law to the facts proved.

We think there was no error committed in the court below, in allowing the question to be asked on cross-examination of the defendants' witness Burr, whether he did not in his letter to Rounds, state differently from what he testified.

We fully recognize the rule that the contents of any writing can not be proved by parol, except when it be shown that the writing is lost, or for some other reason can not be produced. But here the question was wholly collateral; the whole inquiry was for the mere purpose of affecting the credit of the witness, and not to prove any fact in issue in the case.

It does not appear that the plaintiffs had any knowledge that such witness was to be produced at the trial, or that the plaintiffs had any knowledge that he ever wrote a letter to Rounds, until the witness stated it on the stand, and of course they could not be expected to have possession of the letter, or be able to produce it.

It is now well settled that a witness can not be impeached or contradicted by evidence of his statements out of court, differing from his statements in court, unless he be first enquired of as to the statement, and afforded an opportunity to make any explanation he chooses in reference to it, and we are not aware that any distinction has been made between verbal and written statements. If there is not, then the plaintiffs were bound to first

Randolph *v.* Woodstock.

ask the witness before they would be allowed to contradict him, even by producing the letter. The plaintiffs must of course take the witness' statement as to what he wrote, unless they were prepared to contradict him by producing the letter, and could not prove its contents by witnesses without showing its loss.

We are aware that on this question there is some conflict of authority in reported cases, and in elementary books, but the practice in this state has always been in accordance with the decision below. While witnesses were excluded from testifying if interested in the cause, in all preliminary inquiries of witnesses on the *voir dire*, in reference to their interest, it was always allowed to examine them in reference to the contents of any writings that might affect their interest, and this was allowed on the ground that the party might not know what witnesses were to be produced against him, and of course could not be expected to be prepared to produce such writings. This rule is fully recognized by all the writers on the law of evidence, and is very analogous to the question here raised. But however the rule might be, there would not seem to be any room for the defendants to complain, for the plaintiffs failed to draw from the witness, that his letter contained any thing different from his testimony on the stand. We can not accept the view of the defendants' counsel, that a judgment must be reversed, if an improper question is allowed to be asked, though no improper evidence be obtained by his answer. Suppose a party offers to prove by a witness some fact, which is clearly improper and inadmissible, and the offer is objected to, but the inquiry is allowed, and the witness answers that he has no knowledge on the subject, is this error for which the party objecting is entitled to a new trial? We think not. The admission of improper evidence is ground of error, but merely because the court would have admitted it, if the party had it to give, is not.

The statement of the witness, Mrs. Bigelow, as to what Miss Ashley said, was not admitted as evidence. The court decided that it was not admissible evidence, but the witness in the course of her testimony stated it. The court took the precaution to counteract it, by stating to the jury, it was not proper evidence.

It can not be said this was admitted by the court as evidence, and though stated by the witness, against the decision of the court, the county court were not bound to treat it as evidence, or to stop the trial.   If every trial, in the course of which some witness, either by ignorance or design, makes some remark which is not proper evidence, must be regarded as a *mistrial*, very few verdicts could stand.   With the extreme caution exercised by the court in this instance, we think there is not the slightest ground to believe the defendants were prejudiced by the witness' statement, but if they were, it can not be treated as an error of the court which can be revised here.

The judgment is affirmed.