# FRANK F. MARCY *v.* CHESTER S. PARKER.

## May Term, 1905.

Present: TYLER, MUNSON, START, WATSON, HASELTON, and POWERS, JJ.

Opinion filed October 25, 1905.

*Trover — Plaintiff's Title—Naked Possession—Evidence— Plans—Verdict—Motion to Set Aside—Harmless Error— New Trial—Affidavits of Jurors.*

A person who has the actual possession of personal property has a title thereto sufficient to enable him to maintain trover against a mere stranger for its conversion.

In such case, in order to defeat recovery, the defendant must not only show a better title in some other person, but must also so connect himself with such other person that he can stand upon his right.

In trover for a quantity of lumber, the taking of which was justified under certain conditional sale notes given by one Lang to a third person, evidence examined and *held,* that a quitclaim deed and two leases of the premises where the lumber in question was piled, executed by Lang to plaintiff, and a certain lumber contract made between them, were admissible as tending to show plaintiff's possession of the lumber in question at the time it was taken.

In trover for a quantity of lumber, a plan which correctly showed the
location of six piles of lumber, from four of which plaintiff claimed
that defendant had taken lumber, was admissible in connection
with the testimony of the witness who made it, to explain his tes-
timony as to what lumber defendant had moved, although two
adjacent piles of lumber concerning which there was no contro-
versy, were not represented on the plan.

Though objection is made to the admission of evidence, unless an ex-
ception is taken the question is not reserved.

The answer of a witness, that he did not know as he could answer
correctly, that it was a matter to which he never had paid much
attention, shows that the error, if any, in allowing the question
to be answered was harmless.

A motion to set aside a verdict as being against the weight of the evi-
dence is addressed to the discretion of the trial court, and its
action thereon is not revisable.

In trover for a quantity of lumber, evidence examined and *held*, that
a motion to set aside the verdict, upon the ground that there was
no evidence tending to support it, was properly overruled.

Affidavits of jurors who sat upon a case to the effect that they mis-
understood the law of the case, or the instructions of the court,
come within the well settled rule that affidavits of such jurors
will not be received to impeach or set aside their verdict.

TROVER for a quantity of hard wood two-inch plank.
Plea, the general issue. Trial by jury at the September Term,
1904, Orleans County, *Rowell,* J., presiding. Verdict and
judgment for the plaintiff. The defendant excepted.

After verdict, and before judgment, the defendant moved
to set aside the verdict for the reasons stated in the opinion.
This motion was overruled to which the defendant excepted.

The defendant also brought a petition for a new trial,
under V. S. 1662, to the May Term, 1905, of the Supreme
Court for the county of Orleans. This petition was heard
with the defendant's exceptions. The petition was based upon
the allegation "that the charge of the court with respect to
damages was so framed that the jury understood from the

charge that, if your petitioner moved and sold any planks which were not covered by the lien notes, then the jury should render a verdict for the plaintiff for all of the planks moved and sold by your petitioner, notwithstanding a large part of the plank moved and sold was covered by said lien notes." The opinion fully states the other facts.

*Young & Young,* and *B. F. D. Carpenter* for the defendant.

Even a *bona fide* purchaser for value and without notice is not protected as against the holder of a valid lien note on the property purchased. *Sargent* v. *Metcalf,* 5 Gray 306; *Deshon* v. *Bigelow,* 8 Gray 159; *Whitney* v. *Eaton,* 15 Gray 225; *Hirshorn* v. *Canney,* 98 Mass. 149; *Forbes* v. *March,* 15 Conn. 384; *Hart* v. *Carpenter,* 24 Conn. 427; *Cole* v. *Mann,* 62 N. Y. 1; *Bean* v. *Edge,* 84 N. Y. 510; *Harkness* v. *Russell,* 118 N. Y. 663.

Defendant's motion to set aside the verdict should have been granted. If one party makes a *prima facie* case and the same is not rebutted, and the jury disregard such *prima facie* case and render a verdict against such evidence, the verdict should be set aside. *Kelley* v. *Jackson,* 31 U. S. 6 Pet. 622; *Corlies* v. *Little,* 14 N. J. L. 373; *Mumford* v. *Smith,* 1 Caines (N. Y.) 520; *Backus* v. *Clark,* (Kan.) 83 Am. Dec. 437; *Hall* v. *Page,* 4 Ga. 428, 48 Am. Dec. 235.

The admission of the plan prepared by Hunt was error. Wigmore Ev. § § 790, 793; *Hale* v. *Rich,* 48 Vt. 217.

The petition for a new trial should be granted. The jury misunderstood and misapplied the instructions of the court. *Brigham* v. *Eddy,* 97 Mass. 478.

*J. W. Redmond,* and *W. R. Aldrich* for the plaintiff.

Naked possession, whether rightful or obtained by force or fraud, is sufficient to sustain trover against a mere stranger. *Knapp* v. *Winchester,* 11 Vt. 351,

The evidence of plaintiff tends to show that he owned the lumber in question. "The owner of personal property is considered in law as in possession, and, not having parted with his right of possession, he may sustain trover for its conversion, though it never was in his actual possession." *Edwards* v. *Edwards,* 11 Vt. 587.

The affidavits of jurors are not admissible to impeach their verdict., *Newton* v. *Booth,* 13 Vt. 320; *Downer* v. *Baxter,* 30 Vt. 467; *Sheldon* v. *Perkins,* 37 Vt. 550; *Cutler* v. *Cutler,* 43 Vt. 60; *Tarbell* v. *Tarbell,* 60 Vt. 494; *Carpenter* v. *Willey,* 65 Vt. 177; *State* v. *Lawrence,* 70 Vt. 531.

If the jury did misunderstand the charge, and that could be shown, this would be no ground for granting a new trial. *Wheatley* v. *Waldo,* 36 Vt. 228; *Cutler* v. *Cutler,* 43 Vt. 462.

WATSON, J. This is an action of trover for the alleged conversion of a quantity of lumber. The plaintiff's evidence tended to show that the defendant took and sold about thirty thousand feet of two-inch hard wood planks which plaintiff claimed to own by purchase from R. B. Lang of Barton; and also to hold, as against the defendant, by virtue of his claimed possession thereof. The defendant, who was a deputy sheriff, denied that the plaintiff was either owner or possessor of the property. He admitted the taking and selling of the planks in question but claimed and his evidence tended to show, that they were previously conditionally sold to Lang by Taplin & Rowell, and that in payment therefor they took Lang's two lien notes each payable one day after date and duly recorded; that the lien notes covered all the two-inch hard wood planks shipped by Taplin & Rowell to Lang from October 7, 1903, to

November 20, 1903, inclusive, and that they covered no other or different two-inch hard wood planks; that said planks were piled in the Lang millyard in a certain large double pile, just west of the spur track, and in one other stack just south of and next to the double pile in the same row, and none of said lumber was piled in any other stack or pile; that shortly before January 20, 1904, Taplin & Rowell placed the two lien notes, then overdue and unpaid, in his hands, as deputy sheriff, and directed him to enforce them against the two-inch hard wood planks described in each; and that by virtue of said lien notes he took and sold the same two-inch hard wood planks described therein and none other, and applied the net proceeds thereof to the notes in proportion as the planks were covered by them respectively. The plaintiff's evidence tended to show that the defendant took, moved, and sold all the two-inch hard wood planks in the said double pile and the single pile directly south of and next to it, and also nearly all of another stack just south of the one last named and on the same side of the spur track; and that the planks which the defendant admitted that he took and sold were, in fact, delivered at the Lang millyard at an earlier date than October 7, 1903, and were largely planks which had been piled there as early as the first part of August, 1903, and were not covered by the lien notes. In connection with the general verdict for the plaintiff, the jury made a special finding that the hard wood planks which the defendant took and sold were not covered by the lien notes.

It appeared that prior to December 3, 1903, Lang was the owner of the millyard and premises known as the R. B. Lang mill property at South Barton. The lumber in controversy at the time it was moved away by the defendant, was located on these premises, piled or stacked in the millyard.

Subject to defendant's exception, and for the purpose of showing that at the time in question the possession of the millyard was in himself, the plaintiff introduced in evidence a contract, two leases, and a quitclaim deed. The contract was made and executed September 30, 1902, by and between Lang and the plaintiff. By its provisions, in consideration of advancements to be made by the plaintiff, Lang agreed to ship to the order of the plaintiff all the lumber cut out of the then coming season's stock of logs, that the plaintiff should do the exclusive marketing thereof and that Lang should manufacture and car the lumber according to plaintiff's directions. The plaintiff agreed to advance to Lang a certain sum of money per thousand feet when the logs were cut and piled on skids on the "Railroad Lots," a further sum when hauled to Lang's mill, a further sum when the logs were sawed and the lumber stuck up, and a further sum when the lumber was planed and loaded on the cars at South Barton. He also agreed to advance money to Lang on all other logs purchased by him, at different stages from the time when they should be delivered at Lang's mill to the loading of the lumber on the cars inclusive. It further stated "It is agreed and understood by the parties that all logs and the lumber manufactured therefrom, when delivered at or about the Lang mill shall become the sole and entire property of said Marcy and so remain until all advancements made by the said Marcy and the interest thereon are fully paid." The contract was to continue in force until the lumber from the then coming season's stock of logs should be disposed of according to its terms. On September 28, 1903, this contract by agreement in writing on the back, was extended to continue in force until all the lumber manufactured from "the past season's cut of logs, and from the logs to be hereafter cut on lots Nos. 130

and 131, (mentioned in a deed from R. B. Lang to Frank
F. Marcy, dated Nov. 5, A. D. 1902) is fully marketed." The
evidence showed that the lots referred to in the contract as
"Railroad Lots" were owned by the plaintiff and that the
logs cut thereon under the contract belonged to him.    True,
this written contract did not in itself refer to any of the lum-
ber in dispute, but the plaintiff's evidence tended to show that
by subsequent parol agreement it was made to cover all sawed
lumber bought by Lang and delivered at the Lang millyard,
which would include the lumber in question.    Thus in re-ex-
amination the plaintiff testified respecting such sawed lumber
as follows:

"Q.    You may state the substance of what was said be-
tween you and Mr. Lang about that lumber that he should
buy.    Ans.    At various times I was to pay for what lumber
was delivered on my ground and put in my possession, and
it was to be treated the same as the logs.    Q.    Same as the
logs under the contract?    Ans.    Yes sir."

The leases were from Lang to the plaintiff, and of the
Lang millyard where the lumber was piled, one dated October
1, 1903, and recorded on the 6th day of the same month, with
term to October 1, 1903; the other dated September 28, 1903,
and recorded the next day, term to begin at the expiration of
the former lease and to continue one year.    The defendant's
counsel objected to the admission of the written contract and
the two leases on the ground that they were immaterial.    The
quitclaim deed was from Lang to the plaintiff, dated and de-
livered December 3, 1903, and recorded the next day, con-
veying Lang's mill property at South Barton, including the
millyard on which the lumber in dispute was located at the
time it was taken by the defendant.    Defendant objected to its
admission on the ground that it also was immaterial, being

dated after the defendant's lien notes were executed and re-corded. In the light of the parol evidence showing the situa-tion of the parties, the subject-matter of these four docu-ments, and the surrounding circumstances when they were re-spectively executed, there can be no doubt regarding their materiality. They were so connected with the lumber trans-action between Lang and the plaintiff as to form a part of it. They constituted different steps therein, from the time when the plaintiff engaged to advance money to Lang on the logs cut on the plaintiff's lots, and on all other logs purchased by Lang at market price, and the lumber sawed, at different stages of the work, with an agreement that all logs and the lumber manufactured therefrom when delivered at the Lang mill should "become the sole and entire property of" the plain-tiff and so remain until all advancements made by him should be fully paid, and a subsequent parol agreement that all other lumber furnished by Lang was to be treated the same as logs, to the time when, finding that Lang "was running things wrong," the plaintiff received the quitclaim deed and took possession of the property.

True the evidence showed that Lang was in the occu-pancy of the millyard during all the time covered by the terms of the two leases until he gave the quitclaim deed, yet the plaintiff's evidence tended to show that when he received the deed, he put men in charge of the mill and millyard and kept them in charge thereof until after the defendant took the lum-ber in dispute; and that soon after the plaintiff received the deed and before the lumber in question was taken away by the defendant, Lang ceased to work in or about the mill or mill-yard, left the premises, and ceased to exercise any control over the mill premises, or the property there, or the business there carried on. Especially is the materiality of this docu-

mentary evidence obvious if, as the plaintiff claims, the testi-
mony tended to show that he took exclusive possession of all
the lumber in the millyard on or about the day he received the
quitclaim deed, and continued so in possession till after the
lumber in controversy was taken. The defendant denies that
the testimony tended to show that plaintiff took possession of
the lumber in controversy beyond such constructive possession
as the quitclaim deed and leases gave him, if any. We are
referred to the transcript of the evidence to determine this
question.

In addition to the evidence before referred to, the plain-
tiff testified, in substance, that what lumber Lang bought and
delivered into the millyard into the plaintiff's possession, he,
plaintiff, was to pay for and had done so; that Lang would
write down to him that he, Lang, had so much lumber or logs
and had done so much work, and the plaintiff would send
him a check to pay for the lumber which he said was delivered
in the yard; and that when he took the quitclaim deed, he
took Lang's "interest in everything." That about the time he
took the deed, he put Mr. Robinson in charge of his interests
there, and also S. A. Hunt at different times. Hunt was pro-
duced as a witness by the plaintiff and testified in substance
that he worked for the plaintiff from December 22, 1903, until
July, 1904; that he was the plaintiff's foreman in charge of
the property at the Lang mill; that he did the scaling of lum-
ber in the millyard, took care of the lumber there and did
the shipping; that within a few days after December 22, when
he was first put in charge, he went through all the lumber in
the millyard, including that taken by the defendant, and es-
timated it "to determine somewhere near what we had of
different kinds." Robinson was called by the plaintiff and
testified that he went to work there for the plaintiff December

6

4, 1903, and remained as foreman in charge inside until some time in March following; that he was there when the defendant took the lumber, and that he helped Hunt make estimates of the piles of planks in question before the defendant moved them.  Bert Sheldon testified that he was bookkeeper for Lang until the plaintiff took possession, and after that he worked in the same capacity there for the plaintiff; and as we have before observed, the plaintiff's evidence tended to show that Lang went away soon after he gave the quitclaim deed, and had nothing to do with that property or business thereafter.  Certainly this evidence tended to show that with the taking of the quitclaim deed the plaintiff took the actual possession of all the lumber in the millyard, and was thus in possession when the planks in dispute were moved away by the defendant.

A plan prepared by the plaintiff's witness, Hunt, purporting to show four piles of lumber on the west side of the railroad siding running to the Lang mill, numbered 1, 2, 3, 4, from which plaintiff claimed defendant took lumber, and two piles on the mill platform numbered 5, and 6, was offered and received in evidence in connection with the testimony of the witness to explain and make clear what he was talking about with respect to what lumber was moved and where the lumber which was moved was situated before moving with respect to this siding.  Before the plan was admitted the witness, testified on cross-examination that between the piles 2 and 3 was a pile of white birch, and that about half its bigness further from the track on the same side "was another pile of hard wood, not a stack, but heaped up, piled up." That the plan shows with reasonable accuracy the situation of the piles marked thereon had previously been testified by the plaintiff.  Defendant excepted to its admission because it did

not show these other piles and was misleading; that it was not a correct representation of the piles that were there at the time defendant took the planks sued for. The two piles of lumber which the evidence shows were not represented on the plan were not in controversy and could have no bearing on any issue before the jury. There was no dispute as to the location of the six piles represented thereon with reference to each other nor with reference to the spur track. The location of any other piles was wholly immaterial, and their representation on the plan could not have made the testimony of the witness any clearer to the jury. The plan was admitted for a particular purpose, and in the ruling there was no error. The case of *Hale* v. *Rich*, 48 Vt. 217, is full authority for this holding.

The plaintiff called B. C. Berry as a witness who testified that the defendant pointed out to him the stacks of lumber in the millyard, which he claimed he had taken, and placed them in charge of the witness as keeper; that there were one solid or double stack and five others, making six in all, if the double one is called two. After testifying on which side of the track the stacks were, the witness was shown the plan and asked to state if it represented the situation of the stacks that he was put in charge of. To this the defendant's counsel objected; but no exception was taken to its admission and the question is not before us. In re-examination the witness was asked when if ever he first noticed that pile 3 on the plan was moved. Defendant's counsel objected to the witness being allowed to testify by the number on the plan, and excepted to the allowance of the question. The witness answered that he didn't know as he could answer that correctly, that it was a matter which he never paid much attention to. We

need not consider this exception, since the answer was harmless.

At the close of the evidence the defendant moved for a verdict on the ground that (1) no title is shown in the plaintiff to any of the property which defendant took, removed, and sold; (2) there is no evidence that the plaintiff had rightfully any possession of the lumber which any of the testimony tends to show was taken possession of, or moved by the defendant; and (3) there is no evidence in the case tending to show or establish facts entitling plaintiff to recover. The motion was overruled, to which defendant excepted. As we have already seen, the evidence tended to show the actual possession of the lumber in question in the plaintiff at the time the defendant took it. The special finding of the jury that the lumber sold by the defendant was not covered by the lien notes shows that as to that lumber the defendant stood as a stranger. The motion was rightfully overruled, for a person having the actual possession of chattels has a sufficient title thereto to enable him to maintain trover against a stranger for their conversion. *Knapp & Worden* v. *Winchester,* 11 Vt. 351; *Potter* v. *Washburn,* 13 Vt. 558.

The court charged the jury, among other things, that "There is no controversy  *  *  upon the testimony in the case but that before and at the time the lumber was thus taken from the millyard, the plaintiff was in full and actual possession of the millyard and of the lumber thus taken away. The testimony shows in substance that on the 3rd day of December last, the plaintiff took a quitclaim deed from Lang, and that deed on inspection seems to cover and it is conceded by counsel, as I understand, does cover the Lang mill and millyard and the appurtenances. I don't think there is anything in

that deed showing that any lumber in the millyard was con-
veyed by it. There is not. I have read it. The testimony
further is that on the 4th day of December the plaintiff put
men in charge of the mill and the yard, and the testimony
further is that pretty soon and in the month of December,
and before the lumber was taken away by the defendant, Lang
moved away, went away, so that left the plaintiff in the
full ·actual possession of the lumber in the yard." To this
part of the charge the defendant excepted as follows: (1)
That the plaintiff was in full and actual possession of the
lumber in controversy, at the time it was taken by the de-
fendant. (2) That the effect of the quitclaim deed and the
possession of the land conveyed to the plaintiff, gave him the
full and actual possession of the lumber in controversy.

Immediately after the above exceptions were taken, the
plaintiff's counsel asked the defendant's counsel whether they
claimed the right to go to the jury upon the question as to
the truth of what the plaintiff says in respect to putting Hunt
in charge, and what Hunt says in respect of being in charge,
and what Robinson says in respect of being in charge of the
property, the millyard there. To which the defendant's
counsel replied, "We have no testimony on that subject." And
further that "The legal effect of this testimony is not sufficient
to give the plaintiff legal possession of the property."

We have already discussed the plaintiff's evidence show-
ing the title and possession of the mill property, including
the millyard, in the plaintiff under the quitclaim deed, and his
possession of all the lumber in the millyard before and at the
time the lumber in question was taken by the defendant, and
further discussion of it is unnecessary. We think the legal
effect of this evidence, undisputed, is as stated in the charge

above quoted, and that the exceptions thereto are without force.

The court further instructed the jury that there being no controversy but that the defendant did take away lumber there as indicated in the part of the charge above quoted, the burden was upon him to show that he had a right to take it, because by taking it he invaded the plaintiff's possession, and the possession that the plaintiff had was sufficient title as against the defendant unless he could show a better right than the possessory right of the plaintiff, to which the defendant excepted. But in this there was no error. · Actual possession of personal property is enough, *prima facie,* to· sustain an· action of trover for its conversion against anyone except the true owner, or one connecting himself in some way with the true owner. In such circumstances in order to defeat a recovery the burden is on the defendant not only to show a better title in some other person but also his connection with such other person. *White* v. *Bascom,* 28 Vt. 268; *Wooley* v. *Edson,* 35 Vt. 214.

The defendant moved to set aside the verdict because (1) it is contrary to the evidence; (2) the uncontradicted evidence in the case shows that a portion of the planks which were taken by the defendant were the planks of Taplin & Rowell and were the same planks covered by the lien notes; (3) the evidence shows that a large part of the planks which defendant took were planks described in the lien notes of Taplin & Rowell, under which he was acting; and (4) the verdict is excessive and gives the plaintiff damages for taking more lumber than any testimony in the case. tends to show that defendant did take, which belonged to plaintiff. The motion was overruled to which defendant excepted.

As we have before seen, the exceptions state that the defendant claimed and his evidence tended to prove that the lien notes before mentioned covered all the two-inch hard wood planks shipped by Taplin & Rowell to Lang from October 7, 1903, to November 20, 1903, inclusive, and that they covered no other or different hard wood planks; and also that the plaintiff's evidence tended to show that the planks which the defendant admitted he took and sold were, in fact, delivered at the Lang millyard, at an earlier date than October 7, 1903, and that they were largely planks that had been piled there as early as the first part of August of that year. Defendant's evidence further tended to show that Taplin & Rowell sold no two-inch hard wood planks to Lang except 10,834 feet sold conditionally July 1, 1903, and the planks sold between October 7, and November 20, inclusive, which were covered by the two lien notes, and that Lang bought no other two-inch hard wood planks of the same kind and quality from anyone else during the summer or fall of that year, and that he bought no two-inch maple, birch and beech planks of anyone in that year except from Taplin & Rowell. The plaintiff claimed that Taplin & Rowell did sell to Lang during that summer and fall more two-inch hard wood planks of the kind and quality in question than above stated; and that Lang must have received other two-inch hard wood planks of the same kind and quality of someone else during that summer and fall, and claimed that the evidence tended so to show. The defendant denied that the evidence had such a tendency, and we are referred to the official transcript of the evidence to determine it. We have examined the evidence as shown by the transcript and think its tendency bears out the claim of the plaintiff in this respect. The motion to set aside the verdict as far as it was based upon the claim that it was without evi-

dence, was therefore properly overruled. And to the extent that the motion is based upon the ground that it is against the weight of evidence, the action of the court below was discretionary and not revisable here.

This disposes of all the exceptions upon which the defendant relies as showing error, and *judgment is affirmed.*

The defendant has brought a petition for a new trial upon the ground that a part of the jury wholly misapprehended the effect of the charge and rendered a different verdict by reason thereof than they otherwise would. The petition is supported by the affidavits of five of the jurors who sat on the case, and by no other evidence. The law is well settled in this State that the affidavits of jurors who sat on a case will not be received to impeach or set aside their verdict; and that their affidavits to the effect that they misunderstood the law of the case, or the instructions of the court, come within this rule. *Sheldon* v. *Perkins,* 37 Vt. 550; *Carpenter* v. *Willey,* 65 Vt. 117; *Tarbell* v. *Tarbell,* 60 Vt. 486.

*The petition is dismissed with costs.*