## IN RE KATE HEALY'S WILL.

### Special Term at Rutland, November, 1919.

Present:    WATSON, C. J., POWERS, TAYLOR, MILES, and SLACK, JJ.

### Opinion filed January 26, 1920.

*Objection Without Exception—Wills—Opinion Evidence—Communications from Testatrix to Attorney Who Drafted Will Not Privileged in Will Contest—Legatee Competent Witness As to Conversations With Testatrix—Questions Not Briefed Waived—Instructions to Jury—Undue Influence— Burden of Proof on Contestant—Necessity of Specific Objection to Charge—Duty of Party Desiring Charge Changed or Modified.*

1.  An objection without an exception raises no question for review.
2.  In proceedings for the allowance of a will contested on the grounds of fraud and undue influence, the lawyer who drew the will was properly permitted to testify to conversations had with the testatrix before and at the time of its execution for the purpose of laying a foundation for an opinion as to her mental capacity at the time of such execution.
3.  Where evidence was objected to as not being rebuttal, but no exception was taken to its admission, no question was saved.

4. Communications by a client to the attorney who drafted his will in respect to that document, and all transactions occuring between them leading up to its execution, are not, after the client's death, within the protection of the rule as to privileged communications in a suit between the testator's devisees and heirs at law, or other parties who all claim under him.

5. The proponent, who was legatee under the will, was not incompetent, under G. L. 1891, to testify as to conversations with the testatrix about matters which were incidental and collateral to the issue of the validity of the will, and which met and explained contestant's evidence tending to show fraud and undue influence on the part of the proponent.

6. Questions not briefed are treated as waived.

7. It was not error to refuse to comply with contestant's requests to charge, where compliance therewith would have been to ignore the proponent's evidence of the circumstances under which the will was executed.

8. Where the testatrix' mother refused to will property to the testatrix only upon condition that the latter would deed and will the same to the proponent, the communication of such fact to the testatrix by the proponent and the attorney who drafted the wills of the testatrix and her mother, did not constitute undue influence.

9. The burden of proof on the issue of undue influence is generally on the contestant; and the burden is not changed by the fact that the person claimed to have exercised the undue influence is a child of the testator.

10. An exception to a charge, a part of which is correct, not pointing out wherein it was claimed to be faulty, is unavailing.

11. Where a party desires to have a charge on a subject changed or modified, he should call the trial court's attention to the change desired.

APPEAL from a decree of the probate court for the District of Bennington allowing an instrument as the last will and testament of Kate Healy. Plea, undue influence and fraud. Trial by jury at the June Term, 1919, Bennington County, *Butler, J.,* presiding. Verdict and judgment for the proponent. The contestant excepted. The opinion states the case.

*James K. Batchelder* for the contestant.

An attorney cannot testify as to communications regarding a deed or other instrument which he prepared for his client in the course of such employment. *Moore* v. *Bray,* 10 Pa. St. 510; *Aiken* v. *Kilburn,* 27 Me. 252; *Foster* v. *Hall,* 12 Pick. 89; *Halton* v. *Robinson,* 14 Pick. 414; *Hunter* v. *Blanchard,* 60 Vt. 673; *Arbuckle* v. *Templeton,* 65 Vt. 205; *Earl* v. *Grout,* 46 Vt. 113; *Gonder* v. *Farmers Nat. Bank,* 102 Atl. 510.

*C. M. Graves* and *Henry Chase* for the proponent.

SLACK, J. The county court on appeal from the probate court rendered judgment allowing and establishing a certain written instrument as the last will and testament of Kate Healy. The case is here on the contestant's exceptions. She opposes the allowance of the will on the ground that it was procured through fraud and undue influence.

Bridget McNamara, the mother of the testatrix, on June 24, 1913, executed a will by the terms of which she devised to the testatrix the McNamara homestead located in Bennington village. On October 22nd, following, the testatrix executed the instrument in controversy, devising therein the same property to the proponent. The proponent and contestant are children of the testatrix. Mrs. McNamara died April 3, 1915, and her will was duly allowed. The testatrix died February 16, 1918.

[1, 2] The proponent called as a witness Mr. Graves, a lawyer, who made the McNamara will and the instrument in question; and he was permitted to testify to conversations had with the testatrix before and at the time the latter instrument was executed for the purpose only of laying a foundation for an opinion as to her mental capacity at the time she executed the same. The contestant interposed objections to certain parts of Mr. Graves' testimony, but no exceptions were saved and so no questions are here. The evidence, however, was clearly admissible for the purpose for which it was received.

The contestant's evidence tended to show, in substance among other things, that sometime after her mother died the testatrix learned that there was a deed on record in the town clerk's office from herself to the proponent, conveying to him title to the same property described in the alleged will; that she was much surprised and very angry at the proponent and often thereafter called him a thief and robber and said that he

had tried to steal her home from her; that she denied having made a deed, but claimed that the proponent got her to his house on one occasion before her mother died, and she signed some paper on his representation that it was necessary to make her mother's will good; that she never mentioned her own will to any one; and that the deed bore the same date as the alleged will.

[3] Mr. Graves was called in rebuttal, and, after testifying that he drew the will of Mrs. McNamara and received instruction from her as to how she wanted it made, was asked what those instructions were. To this the contestant's counsel objected on the ground that the evidence was not rebuttal, but no exception was taken to its admission and the question is not before us. *Marcy* v. *Parker*, 78 Vt. 73, 62 Atl. 19.

Later the same witness was permitted to testify, in substance, subject to the exception of the contestant that he was the attorney of the testatrix in the matter of making her alleged will and a certain deed connected therewith, which will be referred to later, and therefore the evidence was in the nature of a privileged communication, that he went to Mrs. McNamara's house June 22, 1913, in answer to a call from her; that she then told him that she wanted to give her two houses and what money she had in the bank to her grandson, the proponent; that the proponent came into the room and told her that he did not want it so, that it would make his mother and aunt feel badly; that Mrs. McNamara replied, "I don't care what your mother or your aunt think about it, I am going to give everything to you, you are my boy, you have done more for me than any of the family"; that proponent further remonstrated; that Mrs. McNamara then wanted he should have the larger of the two houses; that he told her to leave that house to his mother, "and mother can make a will leaving it to me"; that thereafter the witness suggested that Mrs. McNamara could give Mrs. Healy the life use of the house, but the proponent said his mother would feel badly about it and he did not want it that way; that finally Mrs. McNamara instructed the witness to draw a will giving the large house to Mrs. Healy and the small one to the other daughter, and instructed him to tell Mrs. Healy that unless she, Mrs. Healy, made a will leaving that house to the proponent and made a deed conveying the same to him, she, Mrs. McNamara, would tear up her will and make another leaving everything she had to the proponent, and in that connection told the witness that she would tell Mrs. Healy

the same thing. The subject of the deed had been mentioned by the witness to Mrs. McNamara. Continuing, the witness testified that later Mrs. McNamara sent for him to learn whether he had seen Mrs. Healy, and upon ascertaining that he had not she insisted that he do so at once; that shortly thereafter Mrs. Healy came to his office and told him that her mother sent her there; that he then related to her what had taken place at her mother's and told her what her mother said would happen if she did not make a will and deed in favor of the proponent; that Mrs. Healy assented thereto and arranged with him to draw the will and deed, saying that she was perfectly willing to do it, that Pat was a good boy—the best child she had; that she arranged to meet him at Pat's house when the papers were ready, giving as a reason for so doing that she did not want her aunt putting her nose into her affairs; that she wanted the papers prepared immediately; that he made a will and deed, and met Mrs. Healy at Pat's house, where she executed both and instructed the witness to put them in his safe.

Unless the witness was incompetent, the evidence was clearly admissible to meet the case made by the contestant.

[4] We are not aware that the precise question here presented has previously been before this Court, although it seems to be well settled elsewhere. The general rule is, that, unless otherwise provided by statute, communications by a client to the attorney who. drafted his will, in respect to that document, and all transactions occurring between them leading up to its execution, are not, after the client's death, within the protection of the rule as to privileged communications, in a suit between the testator's devisees and heirs at law, or other parties who all claim under him. *In re Young*, 33 Utah 382, 94 Pac. 791, 17 L. R. A. (N. S. ) 108, 126 A. S. R. 843, 14 Ann. Cas. 596; *Benzinger* v. *Helmer et al.*, (Md.) 107 Atl. 355; *Russell* v. *Jackson*, 9 Hare 387; *Blackburn* v. *Crawford*, 3 Wall. 178, 18 L. ed. 186; *Glover* v. *Patten*, 165 U. S. 394, 41 L. ed. 760, 17 Sup. Ct. 411; *In re Loree's Estate,* 158 Mich. 377, 122 N. W. 623; *Gurley* v. *Park*, 135 Ind. 442, 35 N. E. 279. See also Wigmore on Evidence, par. 2314, and 4 Jones on Evidence, § 755. The evidence was properly received.

Some of the same evidence was objected to as immaterial but this exception is too frivolous to require notice.

[5]   The proponent was permitted to testify to the conversation between himself and Mrs. McNamara on the occasion testified to by Mr. Graves, and what he told the testatrix about it, subject to the exception of the contestant that the testatrix being dead he was incompetent, under G. L. 1891, to so testify.   This exception is without merit.   *Foster* v. *Dickerson,* 64 Vt. 233, 24 Atl. 253; *In re Buckman's Will,* 64 Vt. 313, 24 Atl. 252, 33 A. S. R. 930; *Manley* v. *Staples,* 65 Vt. 370, 26 Atl. 630; *In re Mason's Will,* 82 Vt. 161, 72 Atl. 329.   The matter in issue and on trial was the validity of the will, and any arrangement relative thereto, which appeared, was incidentally and collaterally involved.   Moreover, this evidence was admissible to meet and explain the evidence introduced by the contestant tending to show fraud and undue influence on the part of the proponent.   *In re Bugbee's Will,* 92 Vt. 175, 102 Atl. 484; *Gilfillan* v. *Gilfillan's Estate,* 90 Vt. 94, 96 Atl. 704.

[6]   The contestant filed seven separate requests to charge but only the last three have been noticed in her brief, and the others therefore are treated as waived.

Request 5 is, in substance, that if after Mrs. McNamara executed her will and before the testatrix signed the instrument in controversy the proponent told the testatrix that unless she deeded the property to him and made a will giving him the same her mother's will would be changed, and she believed it and by reason thereof made the alleged will as she did, and that otherwise she would not so have made it, the jury might find that the instrument was made through undue influence and was not her will.

Request 6 related to what Mr. Graves told the testatrix, and is in substance the same, in other respects, as request 5.

[7, 8]   These requests were properly refused.   To have complied with them would have been to ignore entirely the proponent's evidence explaining the circumstances under which the instrument in controversy was executed.   We must not lose sight of the fact that at the time this instrument was executed the property therein devised to the proponent still belonged to Mrs. McNamara.   To be sure she had made a will giving the property to the testatrix, but the evidence of the proponent, as already appears, tended to show why she did that, and upon what conditions.   She wanted the proponent to have this property eventually, and consented to will it to the testatrix only upon condition

that the latter would deed and will the same to the proponent. If this were found to be the situation, it could not be said that what Mr. Graves and the proponent did would constitute undue influence. They simply informed the testatrix of the conditions upon which the McNamara will would be permitted to stand. The proponent's evidence, too, tends to show that Mr. Graves, as attorney for Mrs. McNamara, had been instructed by her to so inform the testatrix.

[9]    The last request was, in substance, that if the jury found that the alleged will was executed through the procurement and at the request of the proponent and by reason of his representations, the burden was upon him to show that he did not exercise any undue influence in relation to the same upon the testatrix. We have already noticed all the evidence in the case tending to show what he did concerning the execution of this instrument, and why he did it. In none of these requests is it suggested, even, that any of the representations made to the testatrix were false. The request was properly denied. The burden of proof on the issue of undue influence is generally on the contestant. *In re Walkin's Will,* 81 Vt. 24, 69 Atl. 144. That the person claimed to have exercised the undue influence is a child of the testatrix does not change the burden. *In re Mason's Will, supra; Burton's Admr.* v. *Burton,* 82 Vt. 12, 71 Atl. 812, 17 Ann. Cas. 984. Nothing appeared in this case to take it out of the general rule.

[10, 11]    The contestant excepted "to the charge of the court as to what constitutes undue influence." Wherein it was claimed that the charge on this subject was faulty was not pointed out. She claims in her brief that the definition given by the court "goes beyond what this Court has held," without, even there, indicating in what particular this is so. In part, at least, the charge was correct. This being so this exception is unavailing. Had the exceptor desired to have the instructions on this subject changed or modified, she should have called the attention of the trial court to the change desired. *Barnard* v. *Leonard,* 91 Vt. 369, 100 Atl. 876; *Magoon* v. *Before,* 73 Vt. 231, 50 Atl. 1070; *de Nottbeck* v. *Chapman,* 93 Vt. 378, 108 Atl. 338.

*Decree affirmed, and ordered certified to the probate court*