HUGH MURRAY v. WILLIAM F. NELSON.

May Term, 1923.

Present:   WATSON, C. J., POWERS, TAYLOR, and SLACK, JJ.

Opinion filed October 3, 1923.

*Voluntary Election to Discontinue as to One of Several Defendants in Tort Action—Negligence—Duty of Abutter to Traveling Public—Obligations With Respect to Piping Water—Duty After Creating Icy Condition on Sidewalk—Intervening Negligence—Jury Question—Harmless Error—Duty of Owner to Shut Off Water Likely to Freeze and Render Sidewalk Dangerous—Responsibility When Such Duty Is Delegated—Necessity of Exception—Presumption re Court's Exercise of Discretion.*

1.  In an action of tort against a landlord and tenant for damages for injuries occasioned by the icy condition of the sidewalk on which the building abutted, the defendants having severally moved for a directed verdict, the plaintiff discontinued as to

the tenant upon the court's announcement that a verdict would be directed for the tenant unless this was done, and thereupon the landlord's motion was overruled to which he excepted. *Held*, that the exception was without merit, as defendants' liability, if they were legally responsible for the damages claimed, was joint and several, and plaintiff could at his election sue one or both, or when both were sued discontinue as to either, and neither defendant could complain of the choice made.

2. Under the foregoing circumstances, although required by the court to elect, the plaintiff's choice between the alternatives presented was voluntary in a legal sense.

3. It is the duty of an abutter to keep his property from becoming a source of danger to the traveling public by reason of any defect either in construction, use, or repair, so far as the exercise of the care of a prudent man can guard against the same.

4. The owner of property was within his legal rights when he installed and maintained on his premises pipes and equipment for supplying water to himself and tenants, but in doing both he was bound to use the care of a prudent man to see that the safety of the street was not impaired thereby, which, in the circumstances, required him to take notice of natural weather conditions likely to cause the pipes to freeze and burst, and that if this occurred water would be likely to flow downstairs on to the sidewalk, there freeze, and create a condition likely to imperil those rightfully using the street.

5. Where a person by his own fault, through the freezing and bursting of a water pipe on his premises which caused the water to flow on to the sidewalk where it froze, had created a dangerous condition there, it was his continuing duty to safeguard pedestrians using the sidewalk by reasonable precautions until the dangerous condition was eliminated.

6. Where pipes froze and burst on defendant's premises and water therefrom flowed on to the sidewalk and froze, his liability to one slipping on such ice was not affected by the fact that one of defendant's tenants cut the pipe and increased the flow of water on to the sidewalk, if the jury was satisfied that the injured person slipped on ice formed by water that flowed out before the tenant interfered, even though the latter's act contributed to the dangerous situation.

7. Under such circumstances the question of defendant's negligence was for the jury.

8. Admission of certain evidence was harmless, where substantially the same evidence was subsequently admitted without objection.

9. If a question asked the landlord's agent on cross-examination as to his right to enter the basement of rented premises to shut off the water was improper as allowing the witness to give a legal construction of the lease, it was rendered harmless by his answer to the effect that the tenant always gave him leave to go into the basement for that purpose, and he thought he had the right anyway.

10. On redirect examination of a witness for the defendant, the exclusion of an answer as to his understanding about the tenant's duty to shut off the water, if admissible, was not erroneous, where no offer of proof was made, and it did not appear that the answer would have aided the defendant.

11. The submission by the court to the jury of the question of defendant's negligence, based on the theory that water froze in the hallway of his premises, excepted to on the ground that there was no evidence tending to show the fact, *held* without error, there being some evidence, though somewhat obscure, legally susceptible of that construction.

12. Where a water pipe on a landlord's premises ran to a vacant, unheated room under his control, and was so situated as to be likely to freeze and burst in cold weather when not shut off and thereby allow water to run on to the sidewalk and freeze, limited by the prudent man rule he owed the traveling public the positive duty of shutting off the water in such pipe when necessary to prevent freezing, which he could not delegate to another and escape liability for its non-performance, though such other person was a tenant occupying that portion of the building in which the shut-off was located.

13. In an action of tort for negligence where the court either entirely or partially failed to instruct the jury as to the effect of the intervening negligence of a third person, if any, defendant is not in a position to complain, where he merely suggested that the court should call the jury's attention to the matter, but took no exception to the failure of the court so to do, there being no question for review.

14. On exception to the denial of defendant's motion to set aside a
    verdict, it will be presumed that the trial court exercised its
    discretion in denying the motion, unless the contrary appears. ·

ACTION OF TORT to recover damages for personal injuries
sustained by slipping on an icy sidewalk.   *Plea,* the general issue. ·
Trial by jury at the September Term, 1922, Rutland County,
*Butler,* J., presiding.   Verdict and judgment for the plaintiff.
The defendant excepted.   The opinion states the case.   *Affirmed*

*Charles L. Howe, Walter S. Fenton,* and *William E. Dever*
for the defendant.

The landlord is not chargeable with the negligence of the
tenant in the conduct and management of leased premises.
*Beaulac* v. *Robie and Slayton,* 92 Vt. 27; *Blood* v. *Spaulding,* 57
Vt. 422; 16 R. C. L. 1063, § 584; *Clifford* v. *Atlantic Cotton Mills,*
146 Mass. 47, 15 N. E. 84; *Maloney* v. *Hayes,* 206 Mass. 1, 91
N. E. 911, 3 N. C. C. A. 137; *Frischberg* v. *Hurter,* 173 Mass. 22,
52 N. E. 1086; *Shindelbeck* v. *Moon,* 32 Ohio St. 264, 30 A. R.
584.
   It was the duty of the court to charge fully and completely
on every issue presented in the case.   *Bradley* v. *Blandin et al.,*
94 Vt. 243; *State* v. *Clary et al.,* 84 Vt. 110; *Rowell* v. *Town of
Vershire,* 62 Vt. 405.

*Dorsey & Kinney* and *Lawrence, Stafford & Bloomer* for the
plaintiff.

A landlord is responsible for negligent acts or omissions in
respect to a portion of premises over which he retains control.
*Brewer* v. *Farnum,* 208 Mass. 448, 94 N. E. 695, 50 L. R. A.
(N. S.) 312; *Kirby* v. *Boylston Market Assn.,* 74 A. D. 682.
   An abutting owner who creates a condition which artificially
turns water across a sidewalk in such a way as to freeze and
render the walk unsafe is liable for injuries caused thereby to
pedestrians.   *Hynes* v. *Brewer,* 194 Mass. 435, 80 N. E. 503,
9 L. R. A. (N. S.) 598, and note; *Dahlin* v. *Walsh,* 192 Mass.
163, 77 N. E. 830, 6 L. R. A. (N. S.) 615; *Stephens* v. *Deickman,*
158 Ky. 337, 51 L. R. A. (N. S.) 309, and note; *Coman* v. *Alles,*

198 Mass. 99, 83 N. E. 1097, 14 L. R. A. (N. S.) 950; *Cerchione* v. *Hunnewell,* 215 Mass. 588, 102 N. E. 908, 50 L. R. A. (N. S.) 300; *Brown* v. *White,* 202 Pa. St. 297, 51 Atl. 962, 51 L. R. A. 321, and note; *Maloney* v. *Hayes,* 206 Mass. 1, 91 N. E. 911, 28 L. R. A. (N. S.) 200, and note.

The mere assertion that the court erred in a certain ruling presents nothing for review. *Patterson's Admr.* v. *M. W. of Am.,* 89 Vt. 305, 95 Atl. 692; *Newton* v. *Am. Car Sprinkler Co.,* 88 Vt. 487, 92 Atl. 831; *State* v. *Pierce,* 87 Vt. 144, 88 Atl. 740.

POWERS, J.   This is an action to recover damages for personal injuries.   It was brought against William F. Nelson and Joseph Segale, but was discontinued against the latter as will hereinafter appear.   It was tried below by jury, and verdict was for the plaintiff.   The defendant brings it here on exceptions.

The defendant owns a wooden building fronting on Merchants' Row, the principal business street in the city of Rutland. There are two stores on the ground floor, divided at the front by a hallway opening directly on the street and containing stairs leading to the second floor.   In the northerly store there was a restaurant and in the southerly store, a fruit market conducted by Segale, who also leased the basement thereunder.   The second and third floors, except the front room next to the stairway and over the Segale store were occupied by various tenants, who used the hallway and stairs as a common entrance.   The room over Segale's store was vacant, and was in the possession and control of the defendant.   The defendant is a nonresident and the building is in full charge of F. J. Brown, as agent under a power of attorney to lease, repair, and collect the rents.   In the northeast corner of the vacant room above referred to is a lavatory supplied with water through a pipe connecting with the city main.   A pipe comes through into the Segale basement, turns upward to a point just under the ground floor, from which point are two branches:   One goes into the stairway and extends upward therein to the second floor, where it passes through the partition to the lavatory referred to; the other branch supplies a sillcock in the front of the Segale store, which was used to wash the store windows.   There was a shut-off on the main pipe that would shut the water from both these branches, and another on the sill-cock branch, but none on the branch to the lavatory.

So when Segale had occasion to use the sillcock, the water was necessarily let into the lavatory pipe. Both the hall and the vacant room were unheated, and the pipes therein were wholly unprotected from the cold. Prior to the time here in question Brown had arranged with Segale to look after shutting off the water as necessity required. In the early morning of December 28, 1921, the pipe to the lavatory burst, and water in large quantities ran down the stairway, out the door and across the sidewalk. It was a very cold night, and this water froze into glare ice on the sidewalk, creating a condition endangering the safety of one passing that way. Two days later, the plaintiff, while walking along on the sidewalk, slipped on this ice and suffered the injuries here sued for.

All this was within the tendency of the evidence. There was also evidence tending to show that one Taylor, a tenant of the third floor of the building attempted to stop the flow of water in the vacant room by bending the pipe so it would disdischarge out the window; that in this attempt he broke off the pipe, and then went out into the hall and cut the pipe with an axe. The result was that the water all poured down the stairs and out the door for a short time, though it was entirely shut off directly after he cut the pipe.

[1, 2] The defendants severed in defense, and at the close of the evidence, each moved for a verdict. The court announced that the motion in behalf of Segale would be sustained, unless the plaintiff elected to discontinue as to him. Thereupon, the plaintiff did discontinue against Segale, and entry was directed accordingly. The motion in behalf of Nelson was then overruled, and he excepted.

Assuming that this exception is sufficient to cover the action of the court with reference to Segale's motion, it is without merit.

If the defendants were legally responsible for the damages here claimed, their liability was joint and several; the plaintiff could sue one or both; the choice was his, neither defendant could complain of the result of its exercise. *Drown* v. *New England Telephone Company,* 80 Vt. 1, 66 Atl. 801. So, too, if he elects to sue both, he can, at any stage of the case, by leave of the court, at least, discontinue as to either. *Davenport* v. *Newton,* 71 Vt. 11, 42 Atl. 1087. The action of the plaintiff was none the less voluntary in a legal sense, though it resulted

from the announcement of the court. Even if he was required to elect, his choice between the alternatives presented was voluntary. 18 C. J. 1149. Nor was Nelson harmed. If liable at all, he was liable for all the damages recoverable. That liability was neither enlarged nor reduced by the discontinuance. He was left just where he would have been, if the plaintiff had allowed the court to order a verdict for Segale.

[3-7] It is the duty of an abutter to keep his property from becoming a source of danger to the traveling public by reason of any defect either in construction, use, or repair, so far as the exercise of the care of a prudent man can guard against the same. If he artificially collects upon his own premises a substance which from its nature, is liable to escape and do damage to others, he must use due care to restrain it, and is liable for damages resulting from his failure to do so. If he wilfully or negligently creates a dangerous condition in the public highway, he is liable in damages to a traveler therein, who, without his own fault, is injured thereby. This defendant was well within his legal rights when he installed and maintained on his premises pipes and equipment for supplying water to himself and his tenants; but, in the circumstances shown, he was bound to use the care of a prudent man, both in the manner of the installation and the subsequent maintenance, to see to it that the safety of the street was not impaired thereby. He was bound to take notice of the severity of a Vermont winter and the liability of the pipes to freeze and burst; he was bound to know that if they did, the water would be likely to flow down the stairs and out the door on to the sidewalk, and there freeze and imperil the safety of persons rightfully using the street. Nor did the arrangement with Segale as to his operating the shut-off affect his situation. He could entrust this work to Segale if he chose, but it would not relieve him of responsibility. Having by his own fault created a dangerous condition in the street, it was the defendant's continuing duty to safeguard pedestrians using the sidewalk by reasonable precautions until the dangerous condition was eliminated. Merely sanding the ice, for instance, would not necessarily discharge this duty. If sliding boys swept off the sand, the defendant should have renewed it, and kept it sanded as long as the danger he created continued, or as long as a careful man would have done so. Thus far, the case in principle is no different from what it would have been if the de-

fendant had gathered surface water into an artificial channel and turned it across the sidewalk, as in *Hynes* v. *Brewer,* 194 Mass. 485, 80 N. E. 503, 9 L. R. A. (N. S.) 598; or had maintained a drain so that the wash water would flow across the sidewalk, as in *Brown* v. *White,* 202 Pa. 297, 51 Atl. 962, 58 L. R. A. 321; or had kept his eavespout so as to discharge roof water across the walk, as in *Tremblay* v. *Harmony Mills,* 171 N. Y. 598, 64 N. E. 501; or his dam had burst, as in *Lapham* v. *Curtis,* 5 Vt. 271, 26 A. D. 310—in all of which cases, he would be liable, if negligent. The defendant's liability was not affected by the fact that Taylor cut the pipe and increased the flow of water on to the sidewalk, if from the evidence, the jury was satisfied that the plaintiff slipped on ice formed by the water that flowed out before Taylor interfered,—even though the latter's acts contributed to the dangerous situation. *Hynes* v. *Brewer, supra.* It was still a question of proximate cause. The question of the defendant's negligence was clearly for the jury,—and this is so without regard to the applicability of the doctrine of *res ipsa loquitur.*

[8]    The exception to the testimony of Mr. Brown as to his arrangement with Segale about shutting off the water is not sustained. The witness later testified, without objection, to substantially the same thing. So the error, if any, was harmless. *Duprat* v. *Chesmore,* 94 Vt. 218, 110 Atl. 305; *Tyrrell* v. *Goslant,* 93 Vt. 63, 106 Atl. 585; *Wellman* v. *Mead,* 93 Vt. 322, 107 Atl. 396; *Baldwin* v. *Gaines,* 92 Vt. 61, 102 Atl. 338; *Arnold* v. *Somers,* 92 Vt. 512, 105 Atl. 260; *In re Esterbrook's Will,* 83 Vt. 229, 75 Atl. 1.

[9]    Nor is the exception to Brown's testimony, in cross-examination, as to his right to enter the basement and shut off the water sustained. The only ground of objection stated was that it had once been ruled out. It is now argued that it was allowing the witness to give a legal construction of the lease. But if this ground of objection was available to the plaintiff, it would profit him nothing; for the only answer to the question was, in effect, that Segale always gave him leave to go into the basement to shut off the water, and that he, Brown, thought he had that right, anyway. So, if the question was improper in the respect specified, the answer was not, and no error resulted. *Marcy* v. *Parker,* 78 Vt. 73, 62 Atl. 19; *Randolph* v. *Woodstock,* 35 Vt. 291; *Gilfillan* v. *Gilfillan's Estate,* 90 Vt. 94, 96 Atl. 704.

[10]    On redirect examination, the defendant asked Brown what his understanding was about Segale's duty to shut off that water.    Upon objection, this was excluded and an exception was saved.    Assuming that the understanding of the witness was admissible, the defendant made no offer as to what he proposed to show, and it is not sufficiently obvious, to make the ruling erroneous, that the answer would have aided the defendant. *Hathaway* v. *Goslant*, 77 Vt. 199, 59 Atl. 835; *Cilley* v. *Bacon*, 88 Vt. 496, 93 Atl. 261; *Nichols* v. *Central Vermont Ry. Co.*, 94 Vt. 14, 109 Atl. 905, 12 A. L. R. 333; *Smith* v. *Reynolds*, 94 Vt. 28, 108 Atl. 697.

[11]    The court submitted to the jury the question of the defendant's negligence based on the theory that the water froze in the hallway.    To this, the defendant excepted on the ground that there was no evidence tending to show that fact.    It must be admitted that there was very little evidence to that effect, but we cannot say that as matter of law there was none.    The testimony of policeman John Grimes, though somewhat obscure on this point, was legally susceptible of the construction that the water was escaping in the hallway.    If there was any error in the court's reference to the size of the pipe, it certainly did no harm.

[12]    The court charged the jury that it was the defendant's duty to see to it that "this water pipe" was shut off if that was necessary to protect it from freezing.    No question is made but that this instruction was properly qualified by the application of the prudent man rule, but it was excepted to on the ground that Segale, being in possession of the basement where the shut-off was located, was charged with that duty.    There was no error in the instruction.    What the court meant was that it was the duty of the defendant to keep water out of the pipe that supplied the lavatory.    This he could have done by operating this shut-off or by installing another that would shut off the lavatory but not the sillcock.    But his duty to the traveling public was a positive one, and he could not escape it by an attempted delegation of it.    If he chose to entrust the matter to Segale, he assumed the risk of the latter's failure, and Segale's negligence would be, in the eye of the law, the defendant's.

[13]    Assuming that the court failed to instruct the jury as to the effect of Taylor's intervening negligence, if any, or failed adequately to cover this point, the defendant is not in a

position to complain. He did not except to it. He contented himself with suggesting that the court ought to call the jury's attention to the matter, saying: "We think * * * * that the court also should call attention," etc., but did not ask for any exception, and none was noted. So the question is not before us. *Belka* v. *Allen*, 82 Vt. 456, 74 Atl. 91; *Stacey* v. *Dolan*, 88 Vt. 369, 92 Atl. 453; *In re Healy's Will*, 94 Vt. 128, 109 Atl. 19.

For the reason last stated, the objection to the charge with reference to the effect of boys sliding on the ice and thereby removing the material placed there to make it safe is not considered.

[14] The court denied the defendant's motion to set aside the verdict and the latter excepted. The only ground here argued is that the court failed to exercise its discretion under the motion. It is well established in our cases, that a ruling that could be made as a matter of discretion will be here presumed to have been so made unless the contrary affirmatively appears from the record. This is but an application of the presumption of regularity which obtains in this Court. So we start off with the presumption that the court below exercised the discretion which the law required of it; and unless it appears from the record that the court failed or refused to exercise it, the exception is unavailing. It does not so appear. On the contrary, it appears that its decision was made upon consideration, and while the court used language susceptible of the construction that it was not within its power to do what would amount to reversing itself, a fair construction of it is not to that effect. Evidently, what the court meant by its statement was that it would not be according to its idea of judicial policy or propriety.

*Judgment affirmed.*