MATTIE H. AND HARRY L. FORD *v*. HARVEY HERSEY, A. T. SMITH AND A. L. SMITH.

May Term, 1918.

Present: WATSON, C. J., HASELTON, POWERS, TAYLOR, and MILES, JJ.

Opinion filed November 8, 1918.

*Chancery—Cross bill—Abuse of Discretion—Question not Answered—Presumption—Objection After Answer Given—Harmless Error—Evidence.*

This Court will not reverse the order of a chancellor denying a motion to file a cross bill, unless it is a clear case of an abuse of discretion, which is not shown by the facts in this case.

A question asked but not answered cannot result in prejudice to the exceptant.

When the record shows that a question was answered before objection was made, it will not be presumed that the answer was given before objection could have been made.

An objection made and exception noted after an answer responsive to a question is given, is too late to be availing.

Where the object was to show the different amounts and the sum total of money paid by a person during a certain period, the exclusion of evidence of the wages received by such person from his different employers during such period, was harmless.

Decree modified, with the consent of the plaintiff, to conform in substance with the equitable principle that he who seeks equity must do equity.

BILL IN EQUITY brought to set aside two deeds from plaintiffs to defendant Hersey. Heard on bill, answer, special master's report, defendants' exceptions thereto, motion of defendant Hersey for leave to file a cross bill, motion of defendant Hersey for an order on the receiver to pay a sum of money to him, and motion of defendants Smith for leave to file a cross bill, at the September Term, 1917, Chittenden County, *Fish,* Chancellor. Decree, overruling defendants' exceptions and motions, and for the plaintiffs as hereinafter stated. The defendants appealed.

The master reported that the plaintiff Mrs. Ford, who is a niece of the defendant Hersey, commenced living with him at his home in the city of Barre in 1895, and thereafter continued to live with him and assist him in his business affairs and about the house, until she moved to Burlington, on September 1, 1914, to live there with her husband, plaintiff Harry L. Ford; that on April 6, 1904, the said Hersey, by two certain warranty deeds of that date, conveyed to her certain premises owned by him in the town of Barre and city of Barre; that the consideration for such conveyance was founded upon an oral agreement that Mrs. Ford should support and care for said Hersey in a suitable manner during his life time; that there was no express understanding that she should reconvey said premises to him at any time he called therefor; that after the delivery of said deeds she came into the possession of said premises and took control of the same, and on January 9, 1913, was the owner of the same.

The master further reported that on or about January 9, 1913, Mrs. Ford was about to be confined and became fearful of the result of her illness, and, in the event of her death, desiring said premises to become the property of said Hersey, made two deeds conveying the same to him, each deed containing in the 8th and 9th lines thereof the words ''not to record except at the

death of the grantor''; that an agreement was then and there made by her and the said Hersey that said deeds should be kept in a certain box in her room, and should be removed therefrom, delivered and recorded only in the event of her death, and she never consented to said Hersey's removing the deeds from said box.; that on December 2, 1914, she received a letter from defendant Hersey, who was then living in Barre, stating that he had agreed to sell some of the property in the town of Barre, covered by her deeds, to defendants Smith; that she at once wrote Hersey protesting against this, and went to the box which had contained said deeds but did not find them there; that on December 7, 1914, said Hersey went to Burlington to live with the plaintiffs, and told them that he had fixed up the deeds so that they were as good as any deeds; that about the middle of April, 1915, Mrs. Ford found said deeds among the papers of said Hersey, and found that they had been altered by the erasure of the words in the 8th and 9th lines thereof ''not to record except at the death of the grantor'', and that they had been further altered in the handwriting of said Hersey by changing the descriptions of the property conveyed therein by striking out certain words and adding others, but such alterations did not affect the land thereby conveyed; that at some time said Hersey removed said deeds from said box where they had been placed by said Mattie H. Ford, made changes therein as above indicated, and held them until November 30, 1914, when he had them recorded in the Land Records of the city of Barre and town of Barre.

The master further reported that on December 4, 1914, said Hersey sold, and by his warranty deed of that date conveyed, to the defendants Smith certain of said premises situated in the town of Barre, for the price of $1,000, which price was a fair value of said premises; that before purchasing said premises, the defendant A. T. Smith had knowledge of said alterations in the description in the deed of the premises in the town of Barre, but the master was unable to find that he had knowledge of the erasure of the words in the 8th and 9th lines of said deeds; that said sum of $1,000 was applied by the said Hersey in payment of a certain note signed by Mrs. Ford for the sum of $1,000, given by her to the Granite Savings Bank & Trust Company and then held by it, said note being secured by a mortgage executed and delivered to said bank by the plaintiffs on the premises in

the city of Barre conveyed to Mrs. Ford by said Hersey, which mortgage was executed and delivered subsequent to the time when she obtained title to the said premises, and prior to the execution of the deed to said Smiths; that said note was given, and the loan of $1,000 procured from said bank, in order to aid said Hersey in publishing a book which he had written, but defendants Smith had no knowledge of the circumstances surrounding the securing of said loan or the purpose for which it was obtained; that Mrs. Ford had information from said Hersey of the proposed sale to the Smiths and wrote to him objecting to said sale, but never communicated with said Smiths in regard thereto, and made no demand upon them to reconvey said premises, and had no communication with them in regard thereto, prior to the bringing of the bill of complaint.

The master further reported that at the time of the execution of said deeds by said Hersey to Mrs. Ford on April 6, 1904, he was engaged in considerable litigation which was extremely troublesome to him, and an attorney was pressing him for the payment of a large bill, on which he soon after brought suit.

The allegations in the cross bill, which said Hersey asked leave to file, in substance, were, that on April 6, 1904, at the time of the conveyance to Mrs. Ford, reconveyances were made by Mrs. Ford to him; that the latter became lost or stolen and that was the occasion of the conveyance of January 9, 1913; that the occasion of the deeds of April 6, 1904, was certain litigation then pending and about to be brought against him, and the object of the conveyances was to protect his property from what he considered an unjust attack, and in pursuance of the same scheme he caused suits to be brought by Mrs. Ford against him in which certain fire insurance companies were trusteed; that later suits were brought against him which were adjusted to his satisfaction and the suit of Mrs. Ford was dropped; that at that time the Fords were living with him, and had so lived after their marriage on October 20, 1899; that these and other facts were told by him to his counsel but were not embraced in the answer and were not fully brought out at the hearing before the master; that the failure to bring out all of these facts, and the retirement of his counsel from the cause at his request, created a prejudice and bias in the mind of the master against him so that the master did not give proper consideration to the evidence, and his report and findings were the result of such prejudice and

bias; and, in addition to praying for a perfection of his title by way of cross bill, he asked to have a lien upon the real estate in question to the extent of some $7,000 advanced to the plaintiffs, in the event the court should decide that his title to the real estate was not valid, and asked for a retrial of the whole matter before the chancellor and for general relief.

By the first two paragraphs of the decree it was ordered and decreed:

"(1)   That the two deeds from the orators Mattie H. Ford and Harry L. Ford to the defendant Harvey Hersey dated January 9, 1913, and recorded respectively in the Land Records of the City of Barre, in Washington County, volume 22, page 232, and in the Land Records of the Town of Barre in said County, volume 12, page 284, be and the same are hereby adjudged to be null and void and of no effect, and the same are ordered to be expunged from the respective land records of said City and Town of Barre.

"(2)   That the deed of the defendant Hersey to the defendants A. T. and A. L. Smith dated December 4, 1914, and recorded in the Land Records of said Town of Barre in volume 12, page 285, be and the same is hereby adjudged to be null and void and of no effect and is ordered to be expunged from the Land Records of said Town of Barre, provided and on condition that the orators pay to said defendants A. T. and A. L. Smith the sum of eleven hundred ($1,100) dollars on or before thirty days after the date of the final decree in this case, with interest thereon from January 1, 1918, to the date of payment."

*Edward H. Deavitt* and *J. Ward Carver* for the defendant Hersey.

This defendant should have been permitted to file his cross bill. *Hathaway* v. *Hagan,* 64 Vt. 135; *Van Dyke* v. *Cole,* 81 Vt. 379, 392; *Hyde Park Lumber Co.* v. *Hunt,* 90 Vt. 435.

*Erwin M. Harvey* for the defendants Smith.

*V. A. Bullard* and *Sherman R. Moulton* for the plaintiffs.

WATSON, C. J.   It is said that the decree rendered below gives no consideration to the matters sought to be brought into

the case by the motion of defendant Hersey for leave to file a
cross bill, and that in the circumstances of the case the denial
of the motion was an abuse of discretion, and consequently an
error which this Court will correct. The principle here in-
voked is well understood, but to make it applicable a clear case
of such abuse must be made to appear. Our attention is called
to the fact that it appears from the transcript that when the
consideration or inducement for the deeds of April 6, 1904, was
under consideration and Hersey was testifying concerning the
matter, he was asked whether there was any other consideration
or inducement for making those deeds. Whereupon counsel for
plaintiffs objected on the ground that it went to those prior con-
veyances, which could not be done in the absence of a cross bill;
and that it was not material to any issue in the case. The answer,
which was in the negative, was received and exception saved by
plaintiffs. The direct examination continued and, so far as it
appears, the course of it was not changed by reason of this
objection and exception. The master's report shows that the
case was heard on the evidence in December, 1915, closing on the
29th; that after the taking of testimony was thus concluded, a
further hearing was granted by the master, at Hersey's request,
for the purpose of receiving more evidence, and such hearing was
had on the 27th day of July, 1916. The master's report was filed
on August 2, 1917, and exceptions thereto were filed by all the
defendants on the 16th day of the same month. The motion by
Hersey for leave to file the so-called cross bill was in fact a
motion for leave to file a certain paper then presented, consisting
of an amendment to his answer by way of allegations of new mat-
ter, and a cross bill praying for specific and for general relief,
all of great length and sworn to by him on November 9, 1917.
Consequently this motion was not presented to the chancellor at
the earliest until the day last named, which was nearly two years
after the aforementioned objection, based upon the want of a
cross bill, was made. The additional allegations, except as to
change of counsel and prejudice of the master presently to be
noticed, show nothing not fully known to Hersey when he made
answer to the bill. It is alleged therein, however, that he told
all such additional facts to his counsel before the latter drew the
answer, but that they were not included, and many of them were
not shown in evidence. It is a part of the new allegations that
during the progress of the hearing before the master, Hersey be-

came dissatisfied with the handling of his case, dismissed his counsel, and procured the services of new counsel; that the failure to bring out such additional facts and the change of counsel created prejudice in the master's mind against Hersey, by reason whereof the master did not give proper consideration to the evidence adduced by him, and found against the evidence in the case.

Just when the change of counsel took place does not appear; but it was prior to the hearing had before the master in July, 1916. On that occasion Hersey was represented by the new counsel. So if there was neglect of duty by his former solicitors in the respect named, the hearing of the case on the merits was concluded by the new solicitor who thereafter had charge of the matter without applying for leave to take steps remedying the effect of the alleged neglect of duty, until at least a year and four months after his employment and some three months after the report and exceptions thereto were filed, and immediately preceding the rendition of the decree. The record discloses no attempt to explain this delay in making the application. The full scope and purpose of the motion are realized when we notice that one of the special prayers of the proposed cross bill is that on account of the prejudice and bias of the master, a retrial may be had of the facts and issues involved in the case, and that such retrial may be had before the chancellor. Nothing is shown of record reasonably subjecting the master to criticism in the respect named. So far as appears he performed his duties fairly, fearlessly, honestly, and well. By the third and fourth paragraphs of the decree, the chancellor very properly disposed of the motion by denying it, and there was no abuse of discretion in so doing.

In his direct examination in defence, Hersey testified that at the time he gave the two deeds to plaintiff Mattie H. Ford, there were several other matters which were embarrassing him. In cross-examination he testified that the property in question in the town of Barre was deeded to him by one Payne. He was then asked whether Payne embarrassed him and answered, "That was all settled." Being asked if Payne was one of the gentlemen who was embarrassing him, he answered, "Not in 1905. Q. About that time? Ans. Five years before that. Q. When did you get settled up with Payne? Ans. When that deed was given." Thereupon his counsel objected on the ground of im-

materiality because of remoteness, and an exception was noted. The next question related to the same subject-matter and an exception was saved, but the question was not answered  He was asked whether the Payne case was tried before Mr. Senter as master, and answered in the affirmative.  Objection was then made and exception noted.  He was further asked whether he had had some experience in making erasures in deeds prior to 1904.  Objection was made to the question, but no exception was saved to the ruling.

It is argued that since one much contested question in the suit at bar was whether Hersey made erasures in the two deeds in controversy, as alleged in the bill, the foregoing evidence relating to the Payne matter was pressed for the purpose of creating prejudice in the mind of the master against him by insinuating that he made erasures in a matter entirely immaterial here, and the reception of the evidence in the circumstances was error. The question asked but not answered could not have resulted in prejudice to the exceptant.  This leaves the two exceptions taken after the questions had been answered.  The record contains nothing showing that either of these questions was answered before an objection could have been interposed, and it will not be presumed.  The answers given were responsive to the questions, and the exceptions were too late to be availing.  *State* v. *Ward*, 61 Vt. 153, 17 Atl. 483; *State* v. *Fitzgerald*, 72 Vt. 142, 47 Atl. 403; *State* v. *Powers*, 72 Vt. 168, 47 Atl. 830.

Hersey was asked in direct examination what wages the plaintiff Harry L. Ford received from his different employers while he was living at the witness's home.  The master ruled, excluding evidence of this character pointing to the time prior to 1904, when the deeds were given by the latter to Mrs. Ford, and an exception was noted.  An offer was made to show the actual amount of money paid in to the witness by Harry L. while he lived in the family there with the witness, the amount per week, and the different amounts from the time he went there and during the time he lived there.  This offer was excluded and exception saved.  The offer did not include a statement of the amount which defendant purposed to show was paid in either as a whole or at the different times.  The object of the evidence which defendant was trying to introduce was to show the sum total and the different sums so paid in, not the fact of there being money paid in by Harry L.  This being so, we cannot say that any

harm resulted to defendants from the ruling, and the exception is without force.

Defendants Smith took exceptions to the report, and an appeal from the decree; but in argument they only ask that the payment to them by the plaintiffs of the $1,100 and interest mentioned in the decree, be made secure by the terms of the decree.   In this respect the decree, as rendered, is based upon the principle that he who seeks equity must do equity.   Whether this rule, as generally applied, extends far enough to affect the matters in which defendants Smith are here particularly interested, we need not inquire; for not only are the plaintiffs satisfied with its application as made by the chancellor, but consent that the provisions in this respect be made more specific, as desired by the Smiths, if they can be and the decree in its general provisions remains unchanged.  By the decree, the deed therein specified as given to them by defendant Hersey, is ''adjudged to be null and void and of no effect and is ordered to be expunged from the land records, * * * provided and on condition that the plaintiffs pay to said defendants'' Smith the sum specified, within a time limited, with interest thereon, etc.   That such payment may ·be secure as desired by the Smiths, and as consented to by the plaintiffs, this part of the decree should be so amended as to have an alternative provision to the effect that if the said sum with interest thereon be not paid as there ordered, within the new time limited· therefor, relief to the plaintiffs as against the said deed from Hersey to defendants Smith is denied, and the bill dismissed as to the latter with their costs.   When thus amended, the decree in this regard will conform in substance to decrees as sometimes rendered, when based upon the equitable principle mentioned, and be sufficiently protective of the rights ·of the parties.

*The decree is altered to conform to the views above expressed, and, being so altered, it is affirmed and cause remanded. Let a new time be fixed within which the payment shall be made by the plaintiffs to defendants Smith.*