ALLEN MacDONALD, B. N. F. *v.* R. J. ORTON.

May Term, 1926.

Present: WATSON, C. J., POWERS, SLACK, BUTLER, and FISH, JJ.

Opinion filed October 6, 1926.

*Motion for Directed Verdict—Automobiles—Negligence—Contributory Negligence—Inquiries as to Jurors' Connection with Insurance Companies—Harmless Error—Prejudicial Error—New Trial—Lack of Diligence—Mistake of Law—Discretion of Court.*

1. In considering whether court erred in refusing to grant defendant's motion for directed verdict, evidence must be viewed most favorably to plaintiff, and trial court's action will be sustained if evidence fairly and reasonably tends to support verdict.

2. In action of tort for negligence in driving automobile, question of defendant's negligence and plaintiff's contributory negligence *held* for jury.

3. In such action, whether failure of plaintiff, a boy between 7 and 8 years old, who was struck by automobile while attempting to cross street, to look, or to observe automobile, contributed to his injury, *held* for jury.

4. In such action, court's inquiry of jurors, as to whether they were members, stockholders, or officers of, or agents for, any insurance company, *held* nothing of which defendant could complain, he having permitted inquiry to go on wthout objection to a point where he claimed the array had been disqualified.

5. Asking of question by plaintiff's counsel of jurors on *voir dire* examination, as to whether any of them were stockholders or officers in certain insurance company, or had solicited business therefor, although without justification and erroneous, *held* not to present reversible error, where defendant permitted court, without objection, to inquire further concerning the business connections of the several jurors with insurance companies.

6. To constitute reversible error, prejudice must affirmatively appear.

7. While provisions of G. L. 2293 to 2298, inclusive, are remedial and equitable, and to be liberally construed, relief thereunder will be denied if want of diligence on part of party or his counsel affecting grounds for a new trial appear.

8. Counsel's failure, by reason of mistake of law, to call court's attention to error claimed as grounds for new trial, ordinarily will not excuse lack of diligence in bringing error to court's attention.

9. Court's refusal to grant defendant's motion to set aside verdict because of misdirection in court's charge with respect to rate of speed of automobile which constituted *prima facie* negligence, although such instruction might have been prejudicial to defendant, *held* to be within court's discretion, and not to constitute reversible error, where court's attention was not seasonably called to error.

ACTION OF TORT for negligence in operation of automobile. Plea, not guilty. Trial by jury at the June Term, 1925, Caledonia County, *Willcox,* J., presiding. Verdict and judgment for the plaintiff. The defendant excepted. The opinion states the case. *Affirmed.*

*Warren R. Austin* and *William H. Edmunds* for the defendant.

*Oscar L. Shepard* and *Porter, Witters and Longmoore* for the plaintiff.

SLACK, J. This is an action of negligence growing out of an automobile accident which occurred in the village of Hardwick on November 25, 1924. The plaintiff had a verdict and judgment below, and the case is here on defendant's exceptions.

The first exception briefed is to the refusal of the court to

grant defendant's motion for a directed verdict made at the close of all the evidence. The grounds of such motion are, in substance and in effect, that the evidence did not show negligence on the part of the defendant as alleged in the complaint, namely, that he was driving in a careless and negligent manner and at the left-hand side of the street; and that the evidence showed that plaintiff was guilty of contributory negligence. By plaintiff as herein used is meant the person injured.

[1] In considering these questions the evidence must be viewed in the light most favorable to the plaintiff, and the action of the trial court will be sustained if the evidence fairly and reasonably tends to support the verdict.

These facts were undisputed: The plaintiff was between 7 and 8 years old at the time of the accident. He was then on his way home from school, and was attempting to cross Main Street in said village from the easterly to the westerly side to reach a foot bridge that spans the Lamoille River connecting the business part of the village with the section where his parents then resided. When on the westerly side of the street, and traveling diagonally across the same in a northerly direction he was hit by defendant's car, which was moving in the same direction. This car was a seven-passenger Packard, seventeen feet long and about five feet wide, and was being operated by defendant as a public conveyance between Hardwick and Cambridge Junction. At the time of the accident defendant was returning from the latter place to Hardwick, his destination being the Hardwick Inn which is located on the westerly side of Main Street a short distance northerly of the place of the accident. He came into Main Street from Wolcott Street, a street that intersects with the westerly side of Main Street 5 or 6 rods southerly of where the accident happened, and proceeded northerly to the latter point. At that time there were several cars parked on the easterly side of Main Street between the junction of Wolcott Street and the place of the accident. Such cars extended into the street, diagonally, from the curb 10 or 12 feet, or a car's length. That part of Main Street here material is 32 feet and 9 inches wide. The defendant had a clear and unobstructed view of that street, except where said cars were parked, from the Wolcott Street intersection to the point where the accident happened, but his car could not be seen from Main Street in the vicinity of the accident until about the time it entered that street from Wolcott

Street. At or about the time the defendant entered Main Street he sounded both horns—his car being equipped with a horn known as a siren and an electric horn of standard make—and sounded the latter horn several times on Main Street before he hit the plaintiff, but at what points whether in season to give the plaintiff timely warning of his approach, or when too near the plaintiff for either to avoid the collision, did not appear. When defendant's car hit the plaintiff it was being driven so near the sidewalk or curb on the westerly side of the street that other cars could, and did, pass between it and the cars that were parked on the easterly side of the street.

The plaintiff's evidence tended to show further that, in attempting to cross Main Street, he passed between two cars that were parked on the easterly side of the street; that as he came from between those cars he looked in both directions and "couldn't see anything at all" and started across the street in a diagonal course toward the footbridge; that when half way across the street he again looked in each direction and did not see any car and continued on his way; that he traveled faster than a walk, "kind of a hippity-hop" gait; that he did not see defendant's car, or know of its approach, until it was about two feet from him—right on top of him—when he started to run and was hit; that when hit he was about 3 feet from the sidewalk or curb on the westerly side of the street, and that at that point defendant's car was being driven parallel with said walk or curb.

[2] This evidence, together with the undisputed facts, made a case for the jury both on the question of defendant's negligence, and the question of plaintiff's contributory negligence. The defendant was bound, both by common law and by statute (G. L. 4697) to exercise due care and diligence in the operation and management of his car to avoid injuring the plaintiff. That he failed to do so is fairly inferable from the fact that plaintiff was only about 3 feet from the curb on the westerly side of the street when hit, and to reach that point had traveled at least 17 feet, at a hippity-hop gait, in plain view of defendant and defendant was driving his car about 3 feet from the westerly curb of the street and had so driven it a sufficient distance to bring it parallel with said curb at the point of accident although there was a clear space on his right of at least 12 feet between his car and the cars parked on the easterly side of the street.

[3] Concerning the question of contributory negligence, the

defendant insists that plaintiff's evidence that he looked for approaching cars is without probative force since the evidence shows conclusively that if he had looked he would have seen defendant's car. Even so, it cannot be said as a matter of law that plaintiff's failure to look or to observe defendant's car contributed to the accident, since it does not appear that when in the exercise of the requisite care and prudence he should have observed defendant's car it was on the westerly side of the street where it would be likely to hit him if he proceeded. It should be borne in mind that plaintiff's evidence tended to show that he had passed the danger zone of cars approaching from the south, provided such cars were operated in a careful and prudent manner, that he was so near the westerly side of the street that two cars operated in a careful and prudent manner could meet or pass abreast between him and the cars parked on the easterly side of the street, the distance being more than 17 feet. In these circumstances, the jury might well have found that his failure to look before, or while, crossing the street was in no sense the proximate cause, in whole or in part, of the accident. Thus far we have considered only the undisputed facts, and evidence introduced by plaintiff, but negligence on the part of defendant was fairly inferable from his own testimony.

His version of how the accident happened was that when plaintiff came into the street he was accompanied by another boy; that the latter turned back while plaintiff continued across the street; that in the circumstances it was impossible to avoid hitting one of them. In brief, he testified that when he came into Main Street from Wolcott Street he saw plaintiff and another boy come into the street from between the cars that were parked on the easterly side of the street; that he practically stopped his car 8 or 10 feet from where they came into the street; that they turned back and he "shot gears into second or slipped my clutch and let it roll down in high"; that as he started the boys appeared in the street again; that he applied his brakes as soon as he saw them the second time, and stopped his car in between 7 and 8 feet; that he was traveling in the middle of the street, 1½ or 2 feet from the cars parked on the easterly side of the street; that plaintiff was at the left edge of his car frame when he applied his brakes, and was about 15 feet from the curb on the westerly side of the street when he was hit, and that he only turned his car to the left of the center of the

street the "least bit." His evidence as to where the plaintiff was when he was hit was denied by every other witness who testified on that subject, including two called by defendant.

If defendant was traveling in the middle of the street, or practically so, when plaintiff was at the left edge of his car frame, and if he could stop his car in a distance of 7 to 8 feet, negligence on his part was fairly inferable from the fact that he ran far enough before he hit plaintiff to place his car in a position parallel with, and only about 3 feet from, the westerly curb of the street. So, too, want of due care and diligence on the part of defendant was fairly inferable from the fact that he avoided hitting the boy who was with plaintiff by turning his car to the left of the center of the street the "least bit," yet when he hit plaintiff the latter had reached a point only about 3 feet from the westerly curb of the street, and approximately 17 feet from the cars parked on the easterly side of the street.

Without noticing the evidence further, it is enough to say that the motion was properly denied.

[4-6] Before any of the jurymen in attendance upon court had been called in this case, the court, without objection, inquired of some of them, we assume in open court, whether they were members of mutual insurance companies or stockholders or officers in any other insurance companies, after which counsel for plaintiff, without objection, inquired of one of the jurymen who had been interrogated by the court whether he had at some time been agent for the Ætna Insurance Company, or had ever solicited insurance for that company, or had any business relations with it with a view of selling automobile insurance. Following this, twelve jurymen, some of whom had been interrogated by the court and others who had not, were called to the jury box; whereupon counsel for defendant moved to have the entire panel dismissed because of the inquiries which had been made by plaintiff's counsel as stated above, claiming, in effect, that there was no foundation for such inquiries, and that they were made for the sole purpose of giving the jurymen the impression that the defendant was insured by the Ætna Insurance Company, which he asserted was not the fact. The motion was denied, and defendant had an exception. Thereupon the court told counsel for the plaintiff to proceed with his inquires, if he desired to make any, and counsel, after inquiring generally concerning the jurors' acquaintance with the parties and knowl-

edge of the case, asked if any of them were stockholders or officers in the Ætna Insurance Company. The latter question being objected to the court ordered it struck from the record, and allowed the defendant an exception to the asking of it. The court then proceeded, without objection, to inquire further concerning the business connections of the several jurors with insurance companies, the line of inquiry being, in substance and in effect, whether any of them were members, stockholders or officers of, or agents for, any insurance company. After verdict, and before judgment, the defendant filed a motion to set aside the verdict on the ground, among others, that the jurors were prejudiced, biased, and improperly influenced by the questions asked them on the *voir dire.* This motion was denied, and defendant had an exception. Although briefed together these several exceptions are noticed separately. The exception to the refusal to grant the first motion is without merit. While the course pursued by the court throughout the examination of the jurors was novel, and does not have our indorsement, the defendant, having permitted it to go on, without objection, to a point where he claimed the array had been disqualified, could not then be heard to complain. The exception to the asking of the question that was struck from the record would, in the circumstances, entitle defendant to a reversal, except for the fact that in view of what subsequently occurred, without objection, it is impossible to see how defendant could have been prejudiced thereby, and our rule is that to constitute reversible error prejudice must affirmatively appear. The method, too frequently pursued, of instilling in the minds of jurors the fact that an insurance company rather than the defendant must eventually respond to their verdict will not be sanctioned by this court. In the instant case no justification whatever was shown for asking the question excepted to, but for the reason stated reversible error does not appear. There was no error in the refusal of the court to set aside the verdict on the ground stated. Having permitted the action of the court to stand unchallenged until after verdict, the defendant cannot be heard to complain because he may have been harmed by such action.

The court charged the jury, in effect, that if they found that defendant was driving his car at a rate of speed in excess of ten miles an hour at the time of the accident they might consider such fact *prima facie* evidence of negligence on his part. This is

conceded to have been a correct statement of the law relating to speed in cities, incorporated villages, etc., as it stood prior to the passage of Act No. 70, Laws of 1925. See G. L. 4697. But by section 86 of the Act of 1925 the rate of speed in such municipalities declared to constitute *prima facie* evidence of negligence was raised to fifteen miles an hour. No exception was saved to the charge as given on this subject, but one ground of the motion to set aside the verdict is because of this misdirection.

No question is made but that the charge was erroneous in this particular, nor is it claimed that defendant may not have been prejudiced thereby; but it is strenuously urged that since the error was allowed to pass unnoticed at the time, the attempt to take advantage of it in this manner came too late; and it is also claimed that the motion was addressed to the discretion of the trial court, and that its action is not reviewable unless abuse of discretion affirmatively appears.

[7-9] The provisions of our statute relating to new trials (G. L. 2293 to 2298, inclusive) are remedial and equitable in nature and are to be liberally construed. *Webb* v. *State of Vermont,* 90 Vt. 65, 96 Atl. 599; *Nelson* v. *Marshall,* 77 Vt. 44, 58 Atl. 793. But relief under these provisions, whether sought by way of motion as in this case or by petition addressed to this Court, will be denied if want of diligence on the part of a party or his counsel affecting the grounds for a new trial appear. *Webb* v. *State of Vermont, supra; Hotel Vermont Co.* v. *Moore's Estate,* 90 Vt. 33, 96 Atl. 382. The vital question before us, therefore, is whether defendant's failure to call the court's attention to the error complained of at the time was, in the circumstances, excusable. Obviously it was due to counsel's mistake of the law, which ordinarily will not excuse (*Morgan* v. *Houston,* 25 Vt. 570); although exceptions to this rule are to be found among our own cases. *Webb* v. *State of Vermont, supra; State* v. *Williams,* 27 Vt. 724; *Starkweather* v. *Loomis,* 2 Vt. 573. While these cases show the liberal construction that this Court has given statutes relating to new trials, they are not authority for holding defendant's failure to act in the instant case excusable. Here there was no lack or clearness of the statute as in the Webb Case, nor unsettled state of the law as in the case of *State* v. *Williams,* but rather a mere failure to discover a statute which is so clear and explicit in terms as to admit of no doubt as to its meaning. Undoubtedly the court, in the exercise of its dis-

cretion, might properly have granted this motion; but its refusal
to do so, in the circumstances, does not constitute reversible error.
For cases analogous in principle see *Dailey* v. *Bond,* 94 Vt. 303,
111 Atl. 394; *In re Healy's Will,* 94 Vt. 128, 109 Atl. 19; *Murray* v. *Nelson,* 97 Vt. 101, 122 Atl. 519; *Magoon* v. *Before,* 73
Vt. 231, 50 Atl. 1070 (failure to except to charge); *In re Estate
of Martin,* 92 Vt. 362, 104 Atl. 100; *Ford et al* v. *Hersey et al.,*
92 Vt. 405, 104 Atl. 875; *Waterman* v. *Moody & Rogers,* 92 Vt.
218, 103 Atl. 325; *Dunnett & Slack* v. *Gibson,* 78 Vt. 439, 63 Atl.
141; *State* v. *Powers,* 72 Vt. 168, 47 Atl. 830; *State* v. *Fitzgerald,* 72 Vt. 142, 47 Atl. 403; *Laurent* v. *Vaughn,* 30 Vt. 90
(failure to except to evidence); *Bagley* v. *Cooper,* 90 Vt. 576, 99
Atl. 230; *Slayton, Trustee* v. *Drown,* 93 Vt. 290, 107 Atl. 307;
*Martin* v. *Rutledge,* 94 Vt. 258, 110 Atl. 222; *Edmunds Bros.* v.
*Smith,* 95 Vt. 396, 115 Atl. 187 (failure to except to theory upon
which case was tried).

The defendant attempts to distinguish this case from *Dailey*
v. *Bond, supra,* on the ground that the shortage there complained
of was nondirection while here it was misdirection. While the
harmful effect might be greater in a case of misdirection than in
a case of nondirection, we fail to see how the question of due
diligence is thereby affected.

Had the court's attention been seasonably called to this error
it would undoubtedly have been corrected; failing this, defendant's rights could have been saved by a proper exception.

The other ground of the motion, namely, that there was no
evidence to support the verdict, either on the issue of defendant's
negligence or plaintiff's lack of contributory negligence, is disposed of by what has been said concerning the motion for a
directed verdict.

*Judgment affirmed.*

NOTE:—This case when argued was assigned to TAYLOR, J., but he
having deceased, at the May Term, 1926, it was reassigned to Slack, J.